STUART *et al v.* KENNEDY & Co. *et al.**

(Division A.   Jan. 10, 1927.)

[110 So. 847.   No. 25797.]

1. JUDGMENT.   *Decree adjudicating complainant had no title held res adjudicata as to subsequent suit by complainant and wife to establish homestead rights (Hemingway's Code, section 1821).*
Where complainant, after filing declaration of homestead, defended ejectment suit, and instituted proceedings in equity without joinder of wife in either proceeding, and permitted final decree to be entered in favor of adversary, and received conveyance, for which he executed notes and trust deed, such decree is *res adjudicata* that he had no title, as required by Hemingway's Code, section 1821, in order to authorize filing homestead declaration.

2. HOMESTEAD. *Husband or wife must have some kind of ownership in land before homestead claim can arise.*

Before homestead claim can arise, there must be some kind of ownership of land in either husband or wife in order that the claim of occupancy thereof may impress it with character of homestead.

3. HOMESTEAD. *Deed of trust, securing purchase money of homestead, is valid without wife's signature.*

Deed of trust, given to secure purchase money of homestead, is valid without the signature of wife.

*Corpus Juris-Cyc. References: Homesteads, 29CJ, p. 843, n. 16; p. 894, n. 92; Judgments, 34CJ, p. 941, n. 69. Adjudication of homestead claim as *res judicata*, see 13 R. C. L. 695.

APPEAL from chancery court of Tallahatchie county, Second district.

HON. C. L. LOMAX, Chancellor.

Suit by Simon D. Stuart and another against Kennedy & Co. and others. Decree sustaining a demurrer to and dismissing the bill, and complainants appeal. Affirmed.

*Duncan Martin,* for appellants.

The fraud which soils a complainant's hands must be actual, intentional fraud. Mere technical fraud is not a ground for repelling a complainant under the maxim that "He who comes into equity must come with clean hands." 10 R. C. L., pages 389 and 392.

It cannot be even plausibly denied that demurrants are estopped of record to rely upon their insistence of fraud on the part of complainant S. D. Stuart by the fact that in their sworn answer to the bond bill, they, themselves, denied, under oath, specifically and in detail, all such averments of fraud. *Greir* v. *Canada,* 119 Tenn. 17. Sec, also, *Hamilton* v. *Zimmerman,* 37 Tenn. 39; *Steven* v. *Walker,* 67 Tenn. 289; *Cholton* v. *Scruggs,* 73 Tenn. 308; *Allen* v. *Wilbrook,* 84 Tenn. 251; *Tate* v. *Tate,* 126 Tenn. 169; *So. Coal Co.* v. *Schwoon,* 145 Tenn. 191; *Miller* v.

*Wilkins,* 79 Ga. 675; *Gresham* v. *Ware,* 79 Ala. 192; *Cook* v. *McCahill,* 41 N. J. Eq. 169; *Potter* v. *Hollister,* 45 N. J. Eq. 508; 16 Cyc., page 799.

As demurrants are not creditors of Stuart, they have no right to complain of, or to set up a defense in, the transaction between them and Stuart by which *they* "obtained from" Stuart his stock in the Hamilton Land & Improvement Co., which they converted into the land involved in this cause. *Gary* v. *Jacobson,* 55 Miss. 204; *Fewell* v. *Surety Co.,* 80 Miss. 791; *Knut* v. *Knut,* 83 Miss. 361. Fraud does affect right to homestead. *Edmondson* v. *Meacham,* 50 Miss. 34. It also follows from this authority that the "clean hands" maxim does not operate where the homestead is involved.

The fourth ground of the demurrer is predicated upon the insistence that the decree in the Little case, to which case complainant Mary G. Stuart was *not* a party and in the compromise settlement of which she took *no* part, estops complainants from claiming their homestead because said decree undertook to divest out of complainant S. D. Stuart all his right and title to the land in question and to vest same in Kennedy & Company and to declare Kennedy & Company to be the owners of both the legal and equitable title to the land.

Complainants' answer to this insistence of the demurrer is that this decree was absolutely void as to the homestead (declaration of which homestead had been made and recorded long prior thereto), because complainant Mary C. Stuart was not a party to the cause in any way and took no part in the compromise settlement of same in any of the several elements of said compromise; and that it was void not only as to complainant Mary C. Stuart but also as to the husband, complainant S. D. Stuart; and that if the decree was thus void as to this previously declared homestead, so also were all the other elements of the compromise settlement of this Little case, which leaves the rights and equities of the parties exactly *in statu quo ante* the entry of this void decree;

i. e., complainant S. D. Stuart the equitable owner of the land in and on which he had declared and duly recorded his homestead, in strict conformity with the statute. But see *Gulf & C. R. R. Co.* v. *Singleterry,* 78 Miss. 722; *Cummings* v. *Busby,* 62 Miss. 195; *Dulion* v. *Harkness,* 80 Miss. 8, 13 R. C. L., page 637; *McDonald* v. *Sanford,* 88 Miss. 633; *Ravalk* v. *Kraemer,* 68 Am. Dec. 306; *Young* v. *Ashley,* 123 Miss. 693.

As the decree in the Little case and the other elements of the compromise settlement of same were void, it follows, necessarily, that they cannot operate as an estoppel; they were then, are now, and must ever remain absolute nullities; and it is respectfully submitted that no authorities need be cited to support the proposition that no estoppel or other bar to a right can be predicated upon a void decree or other void instrument.

In sections 1821, 1834, Hemingway's Code, the legislature has provided for the homestead, and has forbidden its alienation except in the way specifically pointed out therein.

*Cutrer & Smith,* for appellees.

The complainant Simon D. Stuart, and therefore, his wife, Mary C. Stuart, never at any time had any right, title, claim, or interest in and to the property which they now claim.

In support of this proposition, get in mind the chronology of the transactions. The complainant in an effort to show some interest, title, or claim recognizable in law has utterly failed. The only claim as shown is a conveyance of January 10, 1920, from Kennedy & Company to Stuart & Little, but at the same time and in said instrument a vendor's lien was retained for the purpose of securing the balance of unpaid purchase price, and a deed of trust was executed as additional security. This interest was divested out of and from both Stuart and Little by the foreclosure proceedings, as shown by the

trustee's deed executed in favor of Kennedy & Company on March 4, 1922. See section 1831, Hemingway's Code.

The supreme court has repeatedly held that a husband's conveyance or encumbrance on his homestead, executed by the husband alone to secure the unpaid purchase money, is valid. *Jarvis* v. *Armstrong et al.,* 94 Miss. 145; *Minor et al* v. *Interstate Gravel Co.,* 130 Miss. 553; *Hoinbuick* v. *Jones,* 64 Miss. 240.

The complainant, therefore, cannot complain of the loss of the interest acquired by the conveyance to Little and Stuart by Kennedy & Company in the instrument of January 10, 1920. Whatever interest was then acquired was lost through the foreclosure.

The fundamental basis of the right to exemption is that the alleged householder is entitled to exemption from seizure or sale, under execution or attachment, the land and homestead owned and occupied as a residence, etc. Section 1821, Hemingway's Code. Therefore, ownership and occupancy are both necessary. The ownership of the land has been construed by the supreme court to mean the ownership of any assignable interest in the land. *Berry* v. *Dobson,* 68 Miss. 483.

It is not contended by complainants that except for the conveyance of January 10, 1920, either Mrs. Stuart or Mr. Stuart ever held the legal title. A purported equitable title is claimed by them, but the exhibits negative this allegation, because in each of the judicial proceedings the title and ownership has been decreed to be in Kennedy & Company. The complainants cannot even claim in this action that they were or have been tenants at will, because if they were tenants at will, they were tenants of Kennedy & Company and thereby not binding against it.

This, in reality, is a suit to attack collaterally the judgments and decrees of the circuit and chancery courts and the supreme court of this state, which have finally adjudged and decreed the ownership of the land to be in Kennedy & Company. It makes no difference whether

Mrs. Stuart was or has ever been a party to those suits or named in the conveyances above recited in this brief, her rights are derived through her husband, and in the event her husband has never had any right, *a fortiori* no right ever existed in her. *Christmas* v. *Mauldin,* 130 Miss. 259 at 270.

Manifestly, it could not be contended by the complainants that had the alleged homestead been abandoned and occupancy thereof ceased, any exemption of homestead could be claimed. *Parte* v. *Stewart,* 50 Miss. 717. We submit, therefore, that complainants never having had any title in the land or assignable interest in the property are not within the statute.

II. If the said Simon D. Stuart at any time had any right, title, interest or claim in and to the said lands, the interest was acquired through a fraudulent and covinous scheme entered into between the said Simon D. Stuart and one J. B. Dorsett; and equity will not undertake to carry out the covinous and fraudulent schemes of litigant, but will deny them any relief whatever.

We submit that the complainants being in a court of equity are not in court with clean hands, but are compelled to set up fraudulent, covinous and unlawful schemes to cheat and defraud, and that a court of equity will not lend its aid to the complainants in effecting their purpose, nor recognize any right in the subject matter of fraud. We submit that the courts have uniformly held that the courts will not assist the parties in enforcing an illegal contract. See *Mitchell* v. *Campbell,* 111 Miss. 806 at 810.

The court of chancery will give no man a remedy on a contract made in contemplation of a violation of the law. *Wooten* v. *Miller,* 7 S. & M. 385; *Hoover* v. *Pierce,* 26 Miss. 627.; *Mayor of Town of Jackson* v. *Bowman,* 39 Miss. 671 at 679.

Where a contract belongs to a class which is condemned by public policy, it will be declared illegal, though in that

particular instance no particular injury may result to the public, as the test is the evil tendency of the contract and not its actual result. *Woodson* v. *Hopkins,* 85 Miss. 171 at 185; *Lowenberg* v. *Cline,* 125 Miss. 284 at 293.

It is well settled that every contract which grows out of or is connected with an illegal or immoral act is absolutely void, and will not be enforced in law or in equity. *Deans* v. *McClendon,* 30 Miss. 343 at 357; *Brown* v. *Williams,* 7 How. 14; *Green* v. *Robinson,* 5 How. 102.

It is immaterial that the parties were *in pari delicto.* All the parties participated in the violation of the law and are *in pari delicto* in such cases. The court will not, where the contract has been executed, interfere for the relief of either party, but will leave them in their respective conditions; or when the contract is executory, they will likewise refrain lending aid to carry it into effect. *McWilliams* v. *Phillips,* 51 Miss. 196; *Lenonous* v. *Myer,* 71 Miss. 523; *Woodson* v. *Hopkins,* 85 Miss. 186; *Lowenberg* v. *Cline,* 125 Miss. 284; *McLaurin* v. *Western Union Tel. Co.,* 108 Miss. 273; *Ballew* v. *Williams,* 109 Miss. 74.

If the original transaction be illegal, are subsequent undertakings and agreements in renewal of it or based on it, are likewise illegal and void. *Collins* v. *McCargo,* 6 S. & M. 128.

If the original contract is tainted with immorality or invalid, no valid contract could be made to rest upon same consideration, and all such subsequent agreements and undertakings are void which can be traced back to the matter and depend upon the original illegal consideration. *Collins* v. *McCargo, supra; Adams* v. *Towan,* 8 S. & M. 638; *James* v. *Herring,* 12 S. & M. 341; *Martin* v. *Terrell,* 12 S. & M. 571 at 573; *Kountz* v. *Price,* 40 Miss. 341 at 347; *Wooten* v. *Miller,* 7 S. & M. 380; *Terry* v. *Grant,* 10 S. & M. 89; *Coulter* v. *Robertson,* 14 S. & M. 18; *Wallace* v. *Fanche,* 27 Miss. 269; *Holman* v. *Ringo,* 36 Miss. 692; *Cotton* v. *McKenzie,* 57 Miss. 420; *Chaffe* v. *Wilson,* 59 Miss. 44.

Even though a part of the contract be good and a part be bad, unless the good is wholly separated from the bad and wholly independent of it, the entire agreement is void. *Wilkins* v. *Riley,* 47 Miss. 313; *Cotton* v. *McKenzie,* 57 Miss. 418.

Any contract entered into between two or more persons to wrong or injure a third, is illegal and unenforcible. *Am. Mfg. Co.* v. *Drug Co.,* 113 Miss. 130 at 137.

Even a casual reading of the bill of complaint here discloses a state of facts revolting to a court of conscience. The equitable maxim applicable to the state of facts alleged in the bill of complaint herein, "He who comes into equity must come with clean hands," is beautifully discussed in 1 Pomeroy's Eq. Juris (3 Ed.), section 397, page 657.

Applying the rules universally recognized, the complainants in this case are entitled to no relief, because the subject-matter or transaction in question, is tainted with fraud and unconscientious conduct.

*J. J. Breland,* also, for appellees.

We submit that the only question in this case is: Have appellants Simon D. Stuart and Mary G. Stuart, his wife, a homestead right in the lands in controversy? The bill nowhere alleges that the appellant, Mary C. Stuart, has, or has had at any time, any title whatever in and to the lands in controversy, but asserts that she has a homestead interest in and to said lands by virtue of the title owned by her husband in and to said lands, prior to the decree entered in said cause No. 874, above referred to.

We submit, as an elementary principle of law in this state, that the homestead right or privilege is founded on ownership or some assignable interest in the lands claimed as a homestead. See *Berry* v. *Dobson,* 68 Miss. 483, 10 So. 45.

As to the second proposition upon which appellants base their suit, that the failure of appellant, Mary C. Stuart, to join in the trust deed with her husband, Simon D. Stuart, to secure the balance of the purchase money, we think that it is unnecessary to cite authority on this point. Section 1834, Hemingway's Code, and case cited thereunder, on which appellants rely, have no application to trust deeds to secure the purchase money of lands. See *Billingsley* v. *Neblett,* 56 Miss. 537.; *Jarvis* v. *Armstrong,* 94 Miss. 145, 48 So. 1.

The chancellor correctly sustained the demurrer to the appellants' original bill and the decree should be affirmed.

McGowen, J., delivered the opinion of the court.

Simon D. Stuart and Mary C. Stuart exhibited their bill in the chancery court of Tallahatchie county, Second district, against Kennedy & Co., the Mississippi Fire Insurance Company, and L. Barrett Jones, trustee, seeking to cancel a certain trust deed and quiet and vest title in complainants to certain lands as their homestead. To this bill the defendants interposed a demurrer, which demurrer was by the court sustained, and complainants, appellants here, were granted an appeal to settle the principles of the case.

The bill, as amended, sets out the pleadings and orders in three separate lawsuits, and, necessarily, the writer of this opinion is forced to digest and set forth, in a brief form, what is conceived to be the salient features of the bill and exhibits.

So stated, the case made by complainants' bill as amended is as follows: That complainant S. D. Stuart and one J. H. Little were associated together in business in the town of Wiggins, Stone county, Miss., in several enterprises, in which they became financially embarrassed; defendant Kennedy & Co. being one of their largest creditors. That one John B. Dorsett was the

president and the largest stockholder of Kennedy & Co., and, as such, absolutely and exclusively controlled and dominated its business; he being, for all practical purposes, Kennedy & Co. That among other assets of said Stuart & Little was certain capital stock in the Hamilton Land & Improvement Company, a corporation engaged in buying and selling real estate in the state of Mississippi, said capital stock belonging to them amounting, in round figures, to about fifteen thousand dollars par value, in about equal amounts to each of them, Stuart & Little. That said Hamilton Land & Improvement Company was seeking to liquidate its affairs by transferring its lands to its stockholders in lieu of, and in exchange for, their holdings of stock. That Stuart & Little being, as above stated, largely indebted to Kennedy & Co., turned over their stock (with other of their assets) to said Dorsett, to effect the exchange of said stock for its *pro rata* of the land holdings of the Hamilton Land & Improvement Company so that said lands could be converted into money, or other "quick assets," and, after thus discharging Kennedy & Company's debt against Stuart and Little, that the residue should be accounted for to Stuart & Little, or to their other creditors; that Dorsett did exchange this stock for said lands (including the land involved in this cause), but, in so doing, took title to the lands in himself, and afterwards transferred same to Kennedy & Co., which transactions, as complainants insisted, constituted Kennedy & Co. a trustee in a resulting or constructive trust, of which Stuart & Little were the *cestui que trustent;* that Stuart & Little were also indebted to one A. W. Bond, and that Bond filed a bill in the chancery court of Harrison county, Miss., against Dorsett and Kennedy & Co., and Stuart & Little, said cause being styled: "*A. W. Bond v. J. B. Dorsett et al.,*" No. 4816 of said chancery court, hereinafter referred to as "the Bond case." That in this case, in his bill, Bond averred that he was a creditor of Stuart & Little, and set out the turning over by Stuart & Little of certain of

their assets to Dorsett and the converting of same into land, as above set forth, and the taking of the title thereto in the name of Dorsett, and his subsequent transfer of said land to Kennedy & Co., and charged that this transaction between Stuart & Little on the one hand, and Dorsett and Kennedy & Co. on the other, was covinous and fraudulent as to creditors of Stuart & Little, and prayed that said transaction be so decreed and be set aside, or for a judgment in his favor against Stuart & Little and Dorsett and Kennedy & Co., for the amount due him (Bond) from Stuart & Little. That Dorsett and Kennedy & Co. answered the Bond bill, denying, with most elaborate detail and all possible emphasis, that there was any fraud in the turning over by Stuart & Little of their assets to Dorsett, and explaining, with great particularity, the circumstances of said transaction, and showing in said explanation that said transaction was not only not covinous and fraudulent in any respect, but was altogether honest and legitimate; that, upon the hearing of said case *"Bond* v. *Dorsett,"* the chancellor held and decreed, in effect, that defendant Kennedy & Co. and Dorsett "had obtained from" said Stuart & Little certain assets of Stuart & Little (including the land involved in this cause), and had appropriated same to the use and benefit of Kennedy & Co., to an amount far in excess of Kennedy & Co., claim against Stuart & Little, and hence gave judgment for Bond against Stuart & Little, and against Kennedy & Co. for the amount of Bond's claim against Stuart & Little. That the legal effect of this decree was to render the proposition that Kennedy & Co. held the lands in trust for Stuart & Little *res adjudicata,* and that, while Bond, in his bill, charged actual fraud against Dorsett and Kennedy & Co. and Stuart & Little, that such averments were wholly unnecessary to maintain Bond's right to subject the equitable title of Stuart & Little in said land to Bond's debt against them; and, furthermore, that, while in the bill in the instant case Stuart avers that the facts of the

transaction above referred to were "as averred by said A. W. Bond," said bill in the instant case specifically repudiates the averments of the Bond bill to the effect that the "agreement between Dorsett and Stuart & Little was covinous and fraudulent," which averment is in strict accord with the decree of the chancellor in the Bond case, in which decree he held and decreed, not that Stuart & Little had been guilty of any fraud in said transaction with Dorsett and Kennedy & Co., but, on the contrary, that Kennedy & Co. and Dorsett had obtained from Stuart & Little, by a fraudulent arrangement, certain property belonging to said Stuart & Little (including the land involved in this cause), and had appropriated same to the use and benefit of Kennedy & Co. That, by the transfer of said land by the Hamilton Land & Improvement Company to Dorsett in exchange for stock belonging to Stuart & Little, and turned over by them to Dorsett (and his subsequent transfer of said land to Kennedy & Co.), Stuart & Little became, at that time, by said transfers, the equitable owners of said land; the legal title being in Kennedy & Co., but its holding of said legal title being solely as trustee in a constructive or resulting trust. That thereafter Stuart & Little divided said land by a mutual exchange of deeds, conveying each to the other his portion of the land.

Thereafter, being thus the equitable owner of the land in which homestead is claimed, Stuart executed and recorded a declaration of homestead in said land upon which he was living, in strict conformity with the statute providing for such declaration of homestead; that Stuart & Little filed their bill in the chancery court of Tallahatchie county, Miss. (same being styled "*J. H. Little et al.* v. *Kennedy & Co. et al.*," No. 874, chancery court of Tallahatchie county, and hereinafter referred to as the "Little bill"), in which they averred that, while the legal title to said land was vested in Kennedy & Co., they (Stuart & Little) were the equitable owners of said land, and that Kennedy & Co. held said legal title only

as a constructive or resulting trust for said Stuart & Little, who were the equitable owners of said land by reason of the fact that said land represented and constituted the proceeds of said stock in the Hamilton Land & Improvement Company, which had been turned over by Stuart & Little to Dorsett, and which Dorsett had converted into said land. In their bill, Stuart & Little prayed for a decree divesting the legal title to said lands out of Kennedy & Co. and vesting it in them. Dorsett and Kennedy & Co. answered said "Little bill;" the defense set up in said bill being (in addition to elaborate and manifestly insincere denials of indisputable facts) a claim that, upon a settlement of all accounts between Stuart & Little and Kennedy & Co. said Stuart & Little would be indebted to Kennedy & Co. in a sum in excess of the value of said land, and an inspection of said answer would show the most remarkable fact that there was no claim therein made that there was anything fraudulent in the transaction between Stuart & Little on the one hand and Dorsett and Kennedy & Co. on the other, in which transaction Stuart & Little turned over their stock in the Hamilton Land & Improvement Company.

A compromise of the conflicting claims of the parties was agreed upon, the method of effecting said compromise being: (a) The entry of a consent decree divesting out of Stuart & Little all their title, claim, and interest in said land, and vesting it in Kennedy & Co.; (b) a conveyance by Kennedy & Co. of said land to Stuart & Little; (c) the execution by Stuart & Little of their notes to Kennedy & Co. for a certain sum of money agreed upon as an adjustment of the financial differences between the parties; and (d) the securing of said notes by trust deed executed by Stuart & Little, upon the lands thus conveyed to them—that this method of compromising this suit was one, single, and indivisible transaction, to which compromise, however, complainant Mary C. Stuart was not a party in any way whatever, she not being a party to

said suit, nor to the signing of said notes or trust deed, and having no knowledge of said transaction.

This is a fair digest of the allegations of complainant's bill, but an examination of the exhibits which control deductions and implications of the pleader in his averments lead us to say that, in the Harrison county litigation, the bill charged there was a fraudulent arrangement by which either Stuart & Little would be fraudulently protected. As stated, Dorsett and Kennedy & Co. filed answer denying fraud, and we note that Stuart & Little made no defense to the charges of fraud, and the chancellor found there was such a fraudulent arrangement, and, necessarily, Stuart & Little were bound to have been parties, because it was originally their property being dealt with. The exhibits further disclosed that Stuart was a mere intruder upon this particular quarter section of land at the time of the rendition of the judgment in ejectment in the circuit court made an exhibit to the answer of Kennedy & Co. to the "Little bill," and pleaded in bar of the "Little bill" and the affirmance of that judgment by this court on the 16th day of December, 1918 (118 Miss. 766, 80 So. 105), subsequent to the homestead declaration set out in the record.

We have stated the facts of the bill with implications and conclusions of the pleader as to exhibits. Of course, these do not control as against the actual contents of the exhibits attached to the bill.

The precise question presented here is, does an intruder acquire homestead rights, where the courts have adjudicated in proceedings initiated against him at law, and other proceedings initiated by him in equity without the joinder of his wife in either proceeding, in which it was adjudicated that he had neither legal nor equitable title to the land claimed as a homestead, nor right of possession?

There are other questions presented in this case, but, pretermitting them, we decide only this question.

The lamented chancellor in the court below held that the bill clearly shows, taking into consideration the exhibits, that Stuart never had any title of any kind or description to the land, and, therefore, had no right to file a homestead declaration, having no title to base this homestead exemption upon. The right to homestead exemption is based upon statute, and is controlled by the construction of section 1821, Hemingway's Code, reading:

"Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, *the land and buildings owned and occupied as a residence by him or her,* but the quantity of land shall not exceed one hundred sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of three thousand dollars. But husband or wife, widower or widow, over sixty years of age, who have been exemptionists under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead." (Italics ours.)

The material part of this section is the phrase "owned and occupied as a residence by him or her."

Counsel for appellant seems to rest his case upon the idea that any kind of occupancy is sufficient to clothe the wife with the veto power to prevent any kind of adjudication of the title.

It certainly was adjudicated in the chancery court proceedings that Stuart, the husband, had no equitable title. It certainly was adjudicated by the circuit court and by this court in the ejectment proceedings that Stuart had no legal occupancy of the land, because he was termed a mere intruder by Chief Justice SMITH in the opinion of this court in *Stewart* v. *Kennedy,* 118 Miss. 766, 80 So. 105.

Counsel for appellant insist that, because the wife was not a party to the ejectment suit or the chancery court proceedings, she was therefore not bound by the final judgment in either case as to her homestead rights, and

this is true in a modified sense, if there had ever been any homestead right, but the word "ownership" means in this statute that one spouse or the other must have some kind of right, recognized by law, of occupancy and possession of the land sought to be impressed with the character of a homestead, and, in the cases decided by our court, cited by counsel, the homestead was conceded to exist at the time of the litigation or other proceeding which sought to deprive the wife thereof, and in each case the court held that wherever the homestead was involved the husband and wife were necessary parties to conclude an adjudication of a claim of homestead exemption. The strongest case for appellant's position is the case of *McDonald* v. *Sanford,* 88 Miss. 633, 41 So. 369, 117 Am. St. Rep. 758, 9 Ann. Cas. 1, wherein Chief Justice Whitfield, as the organ of the court, held that there was no *res adjudicata* as to the rights of the wife in a homestead growing out of a decree against the husband alone. In this case *Pounds* v. *Clark,* 70 Miss. 263, 14 So. 22, was cited, which Judge Whitfield condemned and overruled, and upheld the wife's veto power, as being such an interest or right as must be conveyed by a deed, signed and acknowledged by the wife under the statute, citing the case of *G. & S. I. R. Co.* v. *Singleterry,* 78 Miss. 772, 29 So. 754, wherein it was held that the wife's failure to join in a conveyance of the homestead rendered the deed of the husband a nullity, and that the husband might join the wife in a suit to protect the homestead rights and repel an intruder. The Chief Justice also cited *Revalk* v. *Kraemer,* 8 Cal. 66, 68 Am. Dec. 306, a California case, saying that Revalk had given a mortgage upon the homestead which was not signed by the wife, and a bill to foreclose was filed against Revalk without making the wife a party, and a decree was rendered against him subjecting the property to sale, and the California court held that, where the husband appears alone and defends the suit, his right to the homestead is no more concluded by the decision than by his separate

execution of the deed or mortgage. The legal proceedings, to be conclusive, must embrace both husband and wife. That conclusion reached by the court in the case, *supra,* was that a homestead could not be lost to the wife or husband, unless both were parties to the suit.

The case of *G. & S. I. R. Co.* v. *Singleterry,* 78 Miss. 772, 29 So. 755, deals with a homestead, as does each and every one of the adjudicated cases which have been cited by appellant, and not with a case where the husband asserted some kind of equitable title to the land which was determined by the court in a decree reciting that he had no legal or equitable title to the land, and he afterwards executed a mortgage thereon for the purchase money thereof. It makes no difference, in our judgment, whether the decree was one rendered at the end of a hard fought battle, or by consent of the parties. So far as made known to us, the decree is final, binding, and conclusive, adjudicating that Stuart, the husband, had no sort of title to the land here sought to be claimed as a homestead. He had a right to file a bill seeking to establish his title legal and equitable to the land in question, without joinder of the wife therein. He lost his lawsuit, whether voluntarily or involuntarily. Whether he lost by good judgment or bad judgment, there must be an end to litigation.

A slight valid claim of interest in the land would be sufficient to establish ownership, but a mere "squatter" or intruder, without any other claim than unlawful occupancy, may not use his wife to secure another trial of the same facts.

A decree of the chancery court on the bill filed by him for the purpose of asserting his title to these lands, adjudicating that he had no title, and a subsequent purchase of the lands from the successful defendant in that suit, constitutes a complete bar to a suit by him and his wife to establish homestead rights therein. It is quite a different thing to litigate a title, as distinguished from litigation of the homestead right. The decree which was

rendered by the chancery court is *res adjudicata* that Stuart had no title to the land in controversy.

The judgment of the circuit court is likewise conclusive that he had no legal title or right of occupancy, and, before a homestead claim can arise, there must be some kind of ownership of the land in either the husband or the wife, in order that the claim of occupancy thereof may impress it with the character of a homestead.

This case is very similar to the case of *Billingsley* v. *Niblett*, 56 Miss. 537, in which each of the defendants in error (appellees), the Nibletts, and their wives filed a bill to enjoin the sale of a quarter section of land under a trust deed in favor of Billingsley on the ground that the land had, for a long time, been occupied by them as their homestead, and the wives had not joined in the trust deed. "The Nibletts had been in possession of the land, under a bond for title, for many years, and the land during that time was sold at a tax sale, and bought by the plaintiff in error, who brought ejectment against the Nibletts, and they compromised the suit by purchasing the plaintiff's title, he making to them a quitclaim deed, and they making to him the trust deed. The Nibletts charge in their bill that they are ignorant men, and were deceived by Billingsley, who represented that he had a perfect title to the land, whereas in fact his tax title is utterly void. They recognize Billingsley's right to sell the title conveyed by the quitclaim deed, and also propose to do equity by repaying the taxes paid by Billingsley, but they contend that the title under the bond for title cannot be sold under the trust deed, because of the nonjoinder of their wives. Billingsley's answer denies all misrepresentations and fraud, and states that he dismissed his suit in consideration of the compromise The proof sustained the answer. On final hearing, the chancellor made the injunction perpetual, and ordered the Nibletts to pay Billingsley the sum paid out by him for the tax title."

Justice CAMPBELL said, in part, that the deed of trust was not invalid because the wives did not join in its execution. It was made to secure the purchase money of the land agreed to be paid by grantors. "The claim of plaintiff in error is paramount to the claim of a 'homestead.' The land was a subject of legal controversy. Plaintiff in error sued to recover its possession. The grantors in the deed of trust surrendered to the claim asserted by plaintiff in error in court, and purchased his title by promising to pay him a sum of money, and securing its payment by a deed of trust on the land which was the subject of the suit. An attack was made on their title, which so threatened as to induce them to obtain security from harm by purchasing the hostile claim. . . . The defendants in that suit preferred a purchase of his title to a trial of it. They had the right to negotiate and settle, rather than to contest. They recognized the validity of the title of the plaintiff so far as to agree to pay for it, and to accept his deed, and to pledge the land to pay the price of extinguishing his title. He was a vendor, and they were vendees. That he made a quitclaim instead of a warranty deed makes no difference." Judge CAMPBELL then discusses the rights of a wife in the homestead exemption, and concludes his opinion with this statement: "There can be no homestead rights, as against the claim for the purchase money of the land on which the home is, because ownership is a condition precedent to the existence of a homestead." In the case at bar we have a very much stronger case for Judge CAMPBELL's position.

After Stuart had filed his declaration of homestead, he defended an ejectment suit, and prosecuted the litigation to the point of securing judgment of the highest court in the state that he was a mere intruder, and was not, in fact, in legal possession of the lands here in controversy, and, having lost his case, he filed a bill setting up the constructive trust described in the statement of facts, and, when the day of trial came, permitted a final

decree to be entered in solemn form against him in favor of his adversary, and then fortified the strength of that decree, received from his adversary a deed, and for that deed executed a trust deed and notes for the purchase money and interest, reciting in the trust deed that the notes represented the purchase money. He then fails to pay, same is foreclosed, and title acquired by the mortgagee, and money was loaned by other people. After all this he and his wife seek to relitigate the same questions as to a constructive trust in Dorsett by his original acquisition of the land.

We say that the decree of the chancery court of Tallahatchie county is *res adjudicata* that he had no title, or, to put it in the language of the statute, "ownership," and that ownership is as necessary as occupancy.

In the case of *Jarvis v. Armstrong,* 94 Miss. 145, 48 So. 1, this court said: "It has been repeatedly held by this court that a deed of trust given to secure the purchase money of a homestead is valid without the signature of the wife."

Many other authorities might be cited, but we deem it unnecessary to so do.

The decree of the court below sustaining the demurrer to the bill and dismissing the bill is affirmed.

*Affirmed.*