BIGGS *v.* ROBERTS.

No. 41209        October 26, 1959        115 So. 2d 151

*Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*Wm. Harold Cox,* Jackson, for appellee.

408

APPELLANT IN REPLY.

HALL, J.

This case involves the right of possession of the appellee to the middle one-third of Lot 1 of Harvey Place according to map or plat thereof on file and of record in Plat Book B, page 89 of the land records in the office of the Chancery Clerk of Hinds County in Jackson, Mississippi, being 20.5 acres more or less on which is situated the residence of the appellee and occupied by him and his wife, Mrs. Marie Edwards Roberts, who died June 2, 1957 and who was the mother of the appellant.

The chancellor found and was abundantly justified in so doing that the property in question was acquired by Mr. and Mrs. Henry T. Roberts by deed to them as tenants in common on February 16, 1926. Their home was situated on this property. Mrs. Roberts left will which has been duly admitted to probate under which she devised all of her property to her only daughter, the appellant herein.

Mrs. Roberts was entitled to make this will and by the will of her one-half interest in the homestead passed to the appellant because the property owned by Mr. Roberts greatly exceeded that which was owned by the testatrix, but after probate of the will the appellee promptly renounced the same as he had no right to do, because he owned property far in excess of the value of his wife's property. Sec. 670, Code of 1942.

At the trial he claimed his homestead right to the entire property and the appellant claimed the right to

occupy a portion of the same and also claimed the right to a partition thereof and a division of the proceeds of sale.

The chancellor erroneously held that the appellee properly renounced the will and was entitled to do so and to take by inheritance one-half of her estate including one-half of her one-half interest in the land in suit and that Mr. Roberts is the owner of an undivided three-fourths interest in said land and Mrs. Biggs is the owner of an undivided one-fourth interest therein. The chancellor further found, and correctly so, that Mr. Roberts resides in the residence on the land in suit as his home and that said property is not subject to partition at this time. From this adjudication Mr. Roberts appeals claiming that he first acquired the full title to said land under an undated and acknowledged deed in 1917 but the chancellor held, and properly so, that Mr. Roberts acquired nothing by said undated and unacknowledged deed because, as found, said deed was never delivered, but acquired as a tenant in common with his wife under the deed of February 16, 1926. From that decree Mrs. Biggs prosecutes a direct appeal and Mr. Roberts prosecutes a cross-appeal still relying on the undated and unacknowledged and undelivered deed of 1917, but from what we have said it is apparent that the cross-appeal is without merit. The appellant contends that the trial court erred in holding that the property, although the homestead of appellee, was not subject to partition while the widower continued to reside thereon. Actually the only serious contention in issue is whether or not Mr. Roberts is entitled to hold the residence during his lifetime, so long as he remains a widower, as a homestead and the appellant argues that under Section 478, revised Code of 1942, he can only claim a homestead when his title is acquired by inheritance. Said Section 478 reads as follows: "Where a decedent leaves a widow to whom, with others, his exempt

property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood, as long as it is occupied or used by the widow, unless she consent. Likewise, where a decedent leaves a widower to whom, with others, her exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during the period of his being a widower, as long as it is occupied or used by the widower, unless he consent. Provided that this act shall not affect any pending suit.''

We do not think that it is absolutely necessary for the husband to acquire the property by inheritance in order to be entitled to claim it as a homestead. In the case of Lackey v. Harrington, 162 Miss. 512, 516, 139 So. 313, the Court said: ''The widow, having redeemed the property so far as it affects her rights, has title against the other tenants to occupy same as a homestead, so long as she remains a widow, *regardless of the source from which the title of the cotenants is derived.* The statute giving the widow the right to occupy the homestead during her widowhood is to be liberally construed, and serves a beneficial public purpose.'' (Emphasis supplied.) The above quotation was subsequently criticised in one case but it was not withdrawn or overruled.

In the case of Milton v. Milton, 193 Miss. 563, 10 So. 2d 175, the last paragraph of the syllabus is as follows: ''Where testator's widow renounced will devising to her a life estate in the home of testator and family at the time of his death with remainder to daughter, widow was entitled to a one-third interest in the property in fee and daughter to the other two-thirds interest therein, subject to widow's right under statute to occupy and use the property during her widowhood.''

In numerous cases we have held that the homestead exemption law should be liberally construed. In the case of Moody v. Moody, 86 Miss. 323, 38 So. 322,

Judge Truly said on page 328 of the Mississippi Reports: "A law designed to establish a beneficent public policy must be liberally construed, in order to completely effectuate the legislative purpose." And on page 326 of the same volume he said: "The object of the exemption law is to insure that the families of the residents of this state shall never by financial misfortune or stress of circumstances be deprived of their homesteads, and the desired end is sought to be secured by providing that no creditor shall be permitted to wrest from the family the dwelling place. This has been the law and the recognized public policy of this state for many years."

In the case of Dickerson v. Leslie, 94 Miss. 627, 47 So. 659, the Court said: "A law designed to establish a beneficent public policy must be liberally construed in order to completely effectuate the legislative purpose." And on page 634 of 94 Mississippi the Court said: "No statute ever passed has a greater claim upon the Court for liberal construction than this."

In the case of Williams v. Williams, 111 Miss. 129, 132, 71 So. 300, the Court said: "The law looks with favor upon the homestead exemption and guards jealously, not only the right of the husband to occupy with his family the home while he is living, but continues to give shelter to his widow during her widowhood, even saying to the creditors that the homestead is sacred ground and cannot be subjected to their debts."

In the case of Gardner v. Cook, 173 Miss. 245, 253, 158 So. 150, the Court said: "Likewise, homestead statutes are to be construed sensibly, but liberally, in favor of the exemptionist."

In the case of Daily v. City of Gulfport, 212 Miss. 361, 367, 54 So. 2d 485, this Court held: "To hold with appellee's contention would require a narrow construction of the law, which runs counter to our holding in Campbell v. Adairs, 45 Miss. 170, 182, that 'the statutes granting homestead exemption are entitled to be liberally

construed by this Court.'" And in 212 Mississippi at page 370 in the same case the Court quoted with approval from Zukoski v. McIntyre, 93 Miss. 806, 811, 47 So. 435, 436 as follows: "The homestead right is a favored one in the law, and the courts will not be on the alert to defeat the assertion of those rights. Whenever there is serious doubt as to whether or not property is or is not a homestead, the doubt should be solved in favor of the exemptionist, sustaining, instead of defeating, the estate, which is created by a sound legal policy."

In 40 C. J. S., Homesteads, Section 8, the rule is laid down that homestead laws must be liberally construed and in the same book on the same subject at Section 88, pages 525 and 526 it is said: "On the theory that homestead laws are to be liberally construed, and that, if so construed, their policy is to protect the debtor and his family in their possession of a home, irrespective of the character or extent of the estate owned by the debtor, provided he is not a mere intruder, one view is that such an owner, on satisfying requirements as to occupancy and use of the property, may acquire a homestead in the premises. This rule has been said to be in force in the majority of the jurisdictions and to be supported by the great or overwhelming weight of authority and the more recent authorities."

In conference there has been brought to our attention the case of Osburn v. Sims, Executor, et al., 62 Miss. 429, which was decided under the law as it existed in the Code of 1880 as Sec. 1277 thereof but we do not think that case is controlling here for the reason that the law in the Code of 1880 has been changed by subsequent legislation which was not in existance at that time. At that time Sec. 1248 of the Code of 1880 existed as it has been brought forward in the Code of 1942 with the exception of a minor change as to quantity of land and value, but long thereafter our legislature has

added to this section the following: "Provided however that in determining this value, existing encumbrances on such land and buildings, including taxes and other liens, shall first be deducted from the actual value of such land and buildings. But husband or wife, widower or widow, over sixty years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not having a family or not occupying the homestead." In this case we are dealing only with homestead rights, of a man over sixty years of age, and it will be noted that in Sec. 317, Code of 1942, no mention whatsoever is made of a necessity that lands be acquired by inheritance, and we think that the case of Osburn v. Sims, while correctly decided under the Code of 1880, has been in effect changed by the amendment aforesaid found in Sec. 317.

We think that the chancellor was correct in decreeing that Mr. Roberts is entitled to hold the property in question as a homestead so long as he remains a widower and that he was correct in holding that Mr. Roberts' title was acquired by the deed to himself and wife on February 16, 1926.

However, since he had no right to renounce his wife's will, as above pointed out, we are of the opinion that his attempted renunciation was ineffective and that Mrs. Roberts, being the owner of a full undivided one-half interest in the property, had the right to dispose of the fee simple title to same by will and that consequently, under her will, Mrs. Biggs acquired an undivided one-half fee simple interest and not simply an undivided one-fourth interest as decreed by the chancellor. Consequently the decree of the lower court must be reversed and judgment here entered in favor of Mrs. Biggs for an undivided one-half interest in the fee simple title, not subject to partition during the widowerhood of Mr. Roberts.

Affirmed in part on direct appeal and reversed in part and judgment here on direct appeal. Affirmed in part on cross-appeal and judgment here.

*McGehee, C. J., Roberds, P. J., Lee* and *Arrington, JJ.,* concur.

HOLMES, J., Dissenting:

I respectfully dissent from the opinion of the majority insofar as it approves the action of the chancellor in awarding to the appellee homestead rights in the property in suit and denies to the appellant the right of partition.

The facts governing the decision of the question here presented are not controverted. By deed dated February 16, 1926, Mr. and Mrs. Henry T. Roberts acquired the title to the whole of the middle one-third of Lot 1, Harvey Place, Hinds County, Mississippi. They thereupon became tenants in common of said property, each owning an undivided one-half interest therein. Mr. Roberts built a house on said property and he and Mrs. Roberts thereafter occupied the same as a homestead until the death of Mrs. Roberts on June 2, 1957. Mrs. Roberts left surviving her as her sole heirs at law, Mrs. Edwina Ozier Biggs, a daughter by a former marriage, who is the appellant here, and her husband, Henry T. Roberts, who is the appellee here. Mrs. Roberts left a last will and testament wherein she devised to her daughter, Mrs. Biggs, her entire interest in the aforesaid property, which was an undivided one-half interest therein. The will was duly admitted to probate. Mr. Roberts attempted to renounce the will and take his lawful portion as an heir of his wife's estate, but was precluded from doing so because his estate was greater in value than that of his wife. Section 670, Mississippi Code of 1942. Thus, Mrs. Biggs became vested with her mother's entire one-half interest in the aforesaid property, and thereby became a tenant in common of said property

with her stepfather, Mr. Roberts, who owned the other one-half interest therein. As tenants in common, neither of them became entitled to the exclusive possession of said property as against the other, but each became equally entitled to the use and possession of the common property. 86 C. J. S., Tenancy in Common, Section 25, page 383.

Under these facts, Mr. Roberts asserts the right to occupy the whole property so long as he lives and remains a widower, and Mrs. Biggs asserts the right to have a partition of the common property. The chancellor upheld such asserted right of Mr. Roberts and denied such asserted right of Mrs. Biggs, and the majority opinion affirms this action of the chancellor, and in this respect, I am, with deference, unable to bring myself in accord with the majority view.

It should be borne in mind that the property here in suit is the one-half interest which Mrs. Roberts devised by will to her daughter, Mrs. Biggs. Mrs. Biggs asserts no claim of ownership to the one-half interest owned by Mr. Roberts, and Mr. Roberts has no claim of ownership to the one-half interest vested in Mrs. Biggs. Mr. Roberts is seeking, however, in this proceeding to involve Mrs. Biggs' one-half interest by claiming that it is exempt property and not subject to partition during his widowhood. Undoubtedly, Mrs. Biggs, as the owner of an undivided one-half interest in the common property, is entitled to have a partition of the same unless precluded by Section 478 of the Code of 1942. This section reads as follows:

"Where a decedent leaves a widow *to whom, with others,* his exempt property, real and personal, *descends,* the same shall not be subject to partition or sale for partition during her widowhood, as long as it is occupied or used by the widow, unless she consent. Likewise, where a decedent leaves a widower *to whom, with others,* her exempt property, real and personal, *descends,*

the same shall not be subject to partition or sale for partition during the period of his being a widower, as long as it is occupied or used by the widower, unless he consent. Provided that this act shall not affect any pending suit.'' (Emphasis ours).

It is manifest from a casual reading of this section that it deals with a situation where the decedent leaves a widow or widower *to whom, with others,* his exempt property descends. In the case before us the property in suit did not descend to the surviving husband along *with others,* and in fact did not descend to him to any extent of ownership whatever. Had Mrs. Roberts died intestate, her property would have descended to her husband and her daughter in equal parts and the case would have literally come within the aforesaid Code section. This, however, is not the case before us. As will hereafter be pointed out, this Court has held that an exemptionist may devise the homestead in the same manner and to the same effect as any other land. This is what Mrs. Roberts did in the case before us, and the surviving husband, Mr. Roberts, got no part of his deceased wife's interest in the land at her death. The right of the surviving husband to prevent partition and to continue the occupancy of a homestead during widowhood is entirely statutory, and while it is true as said by the majority that exemption laws are to be construed favorably in favor of the exemptionist, at the same time, the plain and unambiguous language of the statute must be given effect. There is no room for construction where the language of the statute is plain and unambiguous. In the case of Hamner v. Yazoo Delta Lumber Company, 100 Miss. 349, 56 So. 466, 490, the Court aptly said:

''The courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be intrenching upon the power of the Legislature. Neither have the

courts authority to write into the statute something which the Legislature did not itself write therein, nor can they ingraft upon it any exception not done by the lawmaking department of the government. Whenever the judiciary shall undertake to violate these rules—indeed, we may say maxims—then it is guilty of usurpation in its most obnoxious form; and the courts dare not do this lest they destroy their own usefulness and power.''

If the appellee is to be permitted to establish homestead rights to the property in suit and prevent a partition thereof at the instance of the appellant, he must bring himself within the plain and unambiguous provisions of Section 478, Code of 1942. This he has not done because the undisputed facts are that Mrs. Roberts devised her entire interest to the land in suit to her daughter, Mrs. Biggs, and, therefore, upon her death her property did not descend to her husband along with others or another, but became vested absolutely in Mrs. Biggs, and Mr. Roberts, because he was precluded from renouncing the will, was likewise precluded from asserting any right or claim against the property devised to Mrs. Biggs.

In my humble opinion, the right of Mr. Roberts to assert a homestead claim to the property devised to Mrs. Biggs has been decided by this Court adversely to such claim in the case of Osburn v. T. J. Sims, Executor, et al., 62 Miss. 429. The facts in the Osburn case, as stated in the report of that case, are as follows:

''In October, 1883, R. D. Osburn, who was childless, but having a wife living, died, leaving a last will and testament by which he devised to his infant nieces, Kate and Daisy Osburn, the house and lot occupied and used by him as a homestead at the time of his death. The testator owned no other property except his household furniture, which was not disposed of by his will. The widow, Linnie L. Osburn, being in possession of the

premises devised, refused to surrender the same to the devisees, claiming that the law gave the property to her, or an interest therein, notwithstanding her deceased husband's will."

On these facts, the Court, speaking through Judge Campbell, delivered the following brief opinion:

"The right of the wife surviving her husband to the homestead he had owned, under Section 1277 of the Code of 1880, which in this respect does not differ from the Code of 1871, is dependent on his dying intestate as to the homestead. It descends when the owner does not dispose of it as he may. The exemptionist may devise the homestead in the same manner and with the same effect as any other land. No change as to this was wrought by the Code of 1880. The following cases are decisive of this: Turner v. Turner, 30 Miss. 428; Nash v. Young, 31 Miss. 134; Norris v. Callahan, 59 Miss. 140.

"Section 1175 of the code applied and governed the rights of the widow in this case, and as she had a separate estate equal in value to what would have been her lawful portion of her husband's real and personal estate, it was properly held that she had no interest in the homestead he had devised."

It was held in the case of Norris v. Callahan, 59 Miss. 140, that the property exempted by law from sale does not descend where the owner of it disposed of it by will. It will be noted that the facts in the Osburn case are almost identical with the facts in the case at bar. It would appear, therefore, that the Osburn case is decisive of the question before us. The majority admit that the Osburn case was decided correctly, but they say that case was decided under the Code of 1880 and that the law has since been changed, the change occurring in Section 317 of the Code of 1942. Manifestly, the section of the Code of 1880 to which reference is made is Section 1248, which reads as follows:

"Every citizen of this state, male or female, being a householder, and having a family, shall be entitled

to hold exempt from seizure or sale, under any execution or attachment, the land and buildings, owned and occupied as a residence by such debtor; provided the quantity of land shall not exceed eighty acres, nor the value thereof, inclusive of improvements, the sum of two thousand dollars.''

This section of the Code of 1880 appears with some changes as Section 317 of the Code of 1942, which section reads as follows:

''Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of five thousand dollars ($5,-000.00); provided, however, that in determining this value, existing encumbrances on such land and buildings, including taxes and all other liens, shall first be deducted from the actual value of such land and buildings. But husband or wife, widower or widow, over sixty years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead. . . .''

An examination of these two sections will disclose that Section 317 of the Code of 1942 shows no change in the corresponding section 1248 of the Code of 1880 except as to the acreage comprising the homestead and the limitation on the value thereof, and except that there was included in said Section 317 the following: ''But husband or wife, widower or widow, over sixty years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead.''

Much emphasis is laid by the majority upon this latter provision of said Section 317. It has no application,

however, to the question under consideration. The latter clause of the section as quoted above presupposes that the right to a homestead has already been established, and it merely provides that the exemptionist if over sixty years of age may continue to assert his exemption even though he is not occupying the homestead. It appears to me clear that insofar as pertains to the question here presented there are no material changes in the law as it existed under the Code of 1880 and the laws as set forth in Section 317 of the Code of 1942.

The majority cite in support of their position the case of Lackey v. Harrington, 162 Miss. 512, 139 So. 313. That case, in my opinion, is not in conflict with Osburn v. Sims, supra. In that case the widow and her children *inherited* the property in question from her husband, subject to an outstanding tax sale. The widow redeemed her interest in the property from the tax sale and successfully asserted her right to occupy the property as a homestead during her widowhood. The Court in that case said: "The widow, having redeemed the property so far as it affects her rights, has title against the other tenants to occupy same as a homestead, so long as she remains a widow, *regardless of the source from which the title of the cotenants is derived. . . ."* (Emphasis ours).

The majority seize upon this language, "regardless of the source from which the title of the cotenants is derived," in support of their argument that it is not necessary for the husband to acquire the property by inheritance in order to be entitled to claim it as a homestead. This language, however, was criticized in the case of Solomon, et al. v. Solomon, 187 Miss. 22, the Court saying: "While the language 'regardless of the source from which the title of the cotenants is derived' is rather broad, it was used in connection with the case the Court was deciding and must be limited thereto."

The case which the Court was deciding was a case

in which the widow and her children inherited the property in question from her husband, therefore, such interest as the widow and children acquired *descended* to them. The case is, therefore, rather in support of the case of Osburn v. Sims, supra, than in conflict with it.

There is another phase of the question here presented which, in my opinion, is fatal to the asserted homestead rights of the appellee, and that is that the appellee has no ownership whatever in the property which Mrs. Roberts devised to her daughter, and has no title thereto either legal or equitable. It has long ago been settled under the decisions of this Court that there must exist some kind of ownership of land in either the husband or the wife in order that the claim of occupancy thereof may impress it with the character of a homestead. In the case of Stuart, et al. v. Kennedy and Co., et al., 145 Miss. 728, 110 So. 847, the Court held:

"Before homestead claim can arise, there must be some kind of ownership of land in either husband or wife in order that the claim of occupancy thereof may impress it with character of homestead."

Again, in the case of Billingsley v. Niblett, et al., 56 Miss. 537, the Court said: "There can be no homestead rights, as against the claim for the purchase money of the land on which the home is, because ownership is a condition precedent to the existence of a homestead."

Of course the land involved in this suit is the one-half interest which Mrs. Roberts devised to her daughter, Mrs. Biggs. Mrs. Roberts had the right to so devise her property. Mr. Roberts, because he owned an estate greater in value than that of his wife, was precluded from renouncing the will or claiming against it. Therefore, the unqualified ownership previously vested in Mrs. Roberts vested under the will in her daughter, Mrs. Biggs, and Mr. Roberts acquired no ownership of any kind therein. Under the authorities cited, he therefore could claim no homestead rights therein because no

homestead claim could be asserted in the absence of a showing that he had some kind of ownership of the land in suit. This he did not have under the undisputed facts in this case.

Accordingly, I am of the opinion that the chancellor erred in awarding to the appellee homestead rights in the land in suit and in denying to the appellant the right of partition, and that such action on the part of the chancellor constitutes reversible error.

*Kyle, Ethridge* and *Gillespie, JJ.*, join in this dissent.