BANK OF MYRTLE *v.* GARRISON, *et al.*

(Division B.   Nov. 7, 1938.)

[184 So. 291.   No. 33361.]

**Chas. Lee Crum,** of New Albany, for appellant.

Marvin Crawford, of New Albany, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The Bank of Myrtle, complainant in the court below, filed a bill in the chancery court of Union county, alleging that W. A. Sanderson and H. L. Barnes are adult residents of the state of Mississippi, county of Union; that on the 27th of November, 1934, the defendant W. A. Sanderson became indebted to the bank in the sum of $244.77, evidenced by promissory notes of that date, one in the sum of $104, and the other in the sum of $140.77,

each due and payable to the bank on the first day of November, 1935; that no payment had been made on the said notes, and that there is now due thereon $244.77, principal, and $47.36, accrued interest on both notes to the date of filing the bill, an aggregate of $292.13, with an additional 10% for collection of the notes by attorneys, as provided in said notes, the total amounting to $321.33; which amount, on demand, the defendant failed and refused to pay.

It is alleged in the bill that W. A Sanderson has no tangible property in this state subject to execution in a court of law; but complainant is informed and believes that the defendant Sanderson is the holder and owner of five promissory notes, dated September 25, 1936, due and payable, one note for $106 on November 1, 1937; one for $112, November 1, 1938; one for $118, November 1, 1939; one for $124, November 1, 1940; and one for $130, November 1, 1940; all bearing interest at 6% from maturity.

It is alleged that these notes were given for the purchase of certain lands in Union county which the defendant Sanderson sold to his co-defendant, H. L. Barnes, at the time of which sale Barnes executed a deed of trust to one, Albert Maxey, trustee, to secure the prompt and faithful payment of each of said notes when they come due. Reference to the deed of trust was made in the bill. It was then alleged, on information and belief, that H. L. Barnes occupied the land as a homestead, being head of a family, and entitled to hold the land against an execution directed from a court of law, but that said land is not exempt on the lien purchase price thereof, nor on the deed of trust set forth in the bill. That if the complainant obtained a judgment against Sanderson for the amount due, and garnished the said Barnes, and obtains judgment for the amounts as they become due, the court at law, not having power to subrogate complainant to the right of Sanderson for the enforcement of his lien against said land, would be powerless to collect such gar-

nishment judgments by execution, for the reason that the said Barnes has no tangible property in the state subject to such execution.

The plaintiff averred that he had no remedy at law, by means of which to collect the notes from either Sanderson or Barnes; but has full, complete and adequate remedy in the court of equity to obtain a decree against Sanderson for the amount of the notes signed by him, and proved to be subrogated to his lien, and right to enforce the lien of the deed of trust for the purchase price of the land. It was then prayed that Sanderson and Barnes be cited to appear and defend the suit, and that the court decree that Sanderson should pay to complainant the amount due on both the notes and that the court in its decree, subrogate all the rights and liens of Sanderson to complainant for the purchase price of the lands. It was prayed that the court issue temporary injunction without notice to either defendant, restraining Sanderson from assigning the said notes due from Barnes, co-defendant of Sanderson, or of discharging any of said notes until they became due according to their tenor; and for other relief.

The defendants admitted the allegations of the bill with reference to the domicil and business of the bank; admitted being joint makers of the notes held by it, and the allegations with reference to the deed of trust executed by Barnes to secure the purchase price of the land in question; admitted the allegations as to the sale of the land, but alleged that Sanderson was then over eighty years of age and a widower, his wife having died about fifteen years prior to the bringing of the suit. At the time of the death of his wife he and she had been living on the land a number of years, using it as their homestead, it being the only land owned by the defendant and his wife at her death. They alleged that the tract contained less than 160 arces and was worth less than $3000; that the defendant was over sixty years of age, and was lawfully entitled to sell this land, his homestead, and

receive in consideration therefor the purchase money, exempt from any debts, and that the payments provided for in the trust deed, as described therein, were to secure the purchase price of said homestead, said consideration to be free from all debts or claims against him. The defendant denied that the complainant had no adequate remedy at law, etc.

Subsequent to the filing of the bill Barnes became dissatisfied with the title, reconveyed the lands to Sanderson on surrender of the notes which he had executed therefor, and the cash payment was also returned; Sanderson again became the owner of the identical lands which were occupied by him and his wife as a homestead prior to her death, and after Sanderson had reached the age of sixty years. Subsequent to the filing of the bill and answer Sanderson died, and by supplemental and amended bill his death was alleged, and his children brought in as defendants.

The children of W. A. Sanderson answered the supplemental bill, admitting that W. A. Sanderson departed this life intestate, that Rogers, sheriff of Union county, had been appointed administrator; and that the suit of said bank against Sanderson was revived against the administrator. They then alleged that Sanderson and his wife, Mrs. E. O. Sanderson—their father and mother—purchased the land described in the bill from one A. M. Blythe, and his wife, and that they owned the land as tenants in common, it being their home during the lifetime of Mrs. Sanderson; and that it continued to be the homestead of Sanderson after the death of his wife; that he was over sixty years of age at the time of her death; that he had continued to receive the profits of the said land; and that prior to the death of his wife it was exempt property, and that after her death he continued to be an exemptionist with respect to the lands. It was alleged by them that their mother, Mrs. E. O. Sanderson, departed this life in 1933, leaving W. A. Sanderson and her seven children as her only heirs-at-law. They ad-

mit that on the 25th of September, 1936, he executed a deed to the land to H. L. Barnes, and that the notes were executed to secure the purchase price of said lands, and that subsequent to this transaction Barnes reconveyed the land to W. A. Sanderson, because he did not believe he had secured a good title—reconveying solely to cancel the notes and deed of trust on the land; they denied that Sanderson's nine-sixteenths interest in the land was subject to the payment of his debts, either before or after his death.

On the hearing it appeared that the lands involved were jointly conveyed to W. A. Sanderson and his wife; that she died in 1933, leaving as heirs her husband and seven children; and that at the time of her death the lands were occupied as a homestead, and had been since 1921. From the evidence it appeared that Sanderson conveyed the lands to Barnes, as alleged in the bill, but that after inquiry and discussion Barnes decided that the title conveyed to him by Sanderson was not perfect, and induced a rescission of the contract by Sanderson, returning to him the cash payment and the notes which he had executed for the purchase of the lands. It therefore appeared that W. A. Sanderson, after the death of his wife, was the owner of a nine-sixteenth interest in the land, which was less than 160 acres, and of less value than $3000.

The court thereupon found that as to the half interest originally owned by Sanderson, it was exempt; and that as to the one-sixteenth interest inherited from his wife, it was not exempt; and directed the sale of the land as to the one-sixteenth interest; from which judgment the bank appealed. There was no cross-appeal from the decree subjecting the one-sixteenth interest inherited from the wife to the demands of the bank.

It is argued here that although the land constituted a homestead as to the one-half interest owned by Sanderson prior to the death of his wife, when he sold the land and subsequently reacquired it, he was not entitled

to the homestead exemption as to the half interest. Section 1765, Code of 1930, provides that every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the lands and buildings owned and occupied as a residence; but that the quantity of land shall not exceed 160 acres, or the value thereof, inclusive of improvements, save as therein provided, exceed $3000. But husband or wife, widower or widow, over sixty years of age, who had been an exemptionist under the section, may not be deprived of such exemption because of not having a family or not occupying the homestead.

By section 1777, Code of 1930, it is provided that, ''The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution.''

It is clearly the purpose of these statutes to give the surviving husband or wife, who has been an exemptionist, the benefit of the exemption if the survivor was over sixty years of age at the time of the partner's death; to give the right to retain the proceeds of the sale of the homestead, should it be best to sell it. It therefore appears that Sanderson did not lose his right of exemption by selling the homestead; nor did the fact that he reacquired the homestead on a rescission of the contract affect his right to exemption. Exemption laws are construed liberally in favor of the owner of the property exempted; and this being a suit in equity, it is clear that Sanderson did not lose his rights, because the proceeds went into reacquirement of the property, and would remain proceeds of the exemption at the time of his wife's death. We think that the Chancellor was correct in holding that the exemption was not lost.

We are not here concerned with the correctness of the decree subjecting the one-sixteenth interest inherited from his wife to sale, as no appeal has been prosecuted, and counsel concede that the court was correct on that proposition. We are not called upon to decide whether in such case the sale could be made, or a partition made, but reserve all questions on that score for future decision.

Affirmed.