279 So.2d 917 (1973)
Marguerite C. MILLS
v.
Ruby G. MILLS, Administratrix, C.T.A.
No. 47072.
Supreme Court of Mississippi.
June 29, 1973.
*918 J.K. Henry, Union, Edmund J. Phillips, Jr., Newton, for appellant.
O.B. Triplett, Jr., O.B. Triplett, III, Forest, for appellee.
SUGG, Justice:
William Henry Mills, Sr. died testate[1] in Newton County, Mississippi on April 20, *919 1969 survived by his widow and 12 children, 8 of whom were by his first marriage, and 4 of whom were by his second marriage to his widow, Mrs. Ruby G. Mills. Testator left a personal estate valued at $2,317.84 and an undivided one-half interest in 89 acres of land which was his homestead.
Mrs. Ruby G. Mills, appellee, was appointed Administratrix, C.T.A. and in her final account claimed that she was entitled to be paid from the assets of the estate the following:

 Widow's allowance ............... $3,000.00
 Probated claim of Administratrix,
 C.T.A. ........................ 1,453.14
 Monument for grave of decedent .. 312.90
 Funeral expenses ................ 532.50
 Taxes on 89 acres of land ....... 89.88
 _________
 Total ........................... $5,388.42

In her final account, appellee alleged that the undivided one-half interest of decedent should be sold "subject to the widow's homestead rights" and that the proceeds derived from the sale should be applied first, to satisfy the claims of appellee; second, solicitor's fee as allowed by the court; third, commission to appellee as Administratrix, C.T.A.; fourth, all court costs accrued in the cause; and finally, upon payment of the above the balance remaining should be distributed equally among the devisees except for Mrs. Audrey M. Darr who should receive nothing because she was not specifically named in the will and except for Louretta Mills Curry and the heirs of Jeanette Mills Loper who should receive nothing because of paragraph 5 of the will which provided that each of their shares be reduced by $4,000 and the shares would not exceed this sum. The 8 children of decedent by his first marriage, appellants, filed a motion for disallowance of the probated claim of appellee in the amount of $1,453.14 on the basis that the property sold to satisfy the claim was exempt property and not required by law to be used for the payment of debts; that no non-exempt property was available except the funds in the checking account for payment of the probated claim. Appellants also filed a motion to vacate the decree of April 16, 1971 which allowed *920 appellee a widow's allowance in the amount of $3,000.00. Appellants then filed a petition to partite in kind the undivided one-half interest of decedent in the 89 acres of land and alleged that a sale of an undivided one-half interest in the entire 89 acres would not bring as much as the sale of an entire interest in that portion of the land set apart after partition in kind. Appellants also filed a petition for construction of the will and alleged that it was the intention of testator to devise his property to all of his children, subject to the life estate of his widow, and that the name of Mrs. Audrey M. Darr was inadvertently omitted from the list of children. In this petition appellants allege that the deeds to W.H. Mills and to Lola Mae Tatum dated August 27, 1964 of separate parcels of land and the deeds to the same parties dated July 22, 1968 of separate parcels of land should be treated as advancements to William H. Mills, Jr. and Lola Mae Tatum.
Appellants answered the final account, denied that the one-half undivided interest of decedent in the realty should be sold, but that the entire realty, including appellee's one-half undivided interest, should be sold, or the property partited, and the portion set apart as the property of decedent, should be sold. Appellants denied that appellee had any homestead rights in the realty, denied that exempt personal or real estate should be sold or applied to satisfaction of the widow's allowance, expenses of administration or the claim of appellee as a creditor.
At the time of the trial all of the 12 children of decedent were living with the exception of Jeanette Mills Loper who died on June 29, 1969. Jeanette Mills Loper was survived by her husband, Paul D. Loper, who died shortly thereafter, leaving as his sole heirs at law his mother, Claudie Mae Loper and three brothers, James C. Loper, Tony Loper and Harry Loper.
Appellants argue that the deeds executed by decedent and appellee to their children, William H. Mills, Jr. and Lola Mae Tatum should be treated as advancements but the general rule is that the doctrine of advancements does not apply except in cases where a decedent dies intestate. The rule is stated in 3 Am.Jur.2d Advancements Section 10 (1962) as follows:
Inasmuch as the doctrine of advancements is based on the assumed desire of the donor to equalize the distribution of his estate among his children, the very foundation of the doctrine prevents it from applying unless the ancestor dies wholly intestate, and that, in the absence of any statutory provision, is the general rule.
Section 475 Mississippi Code 1942 Annotated (1956) provides that advancements may be brought into hotchpot, but the statute is applicable only in the case of a person dying intestate. Since decedent died testate, the conveyances did not constitute an advancement.
Appellants next contend that the devise to these two children of an undivided interest in the entire estate, subject to the life estate of the widow, was adeemed by the delivery of the aforesaid deeds. In 96 C.J.S. Wills § 1172 at 985 (1957), ademption is defined as follows:
"Ademption" is the term used to describe the act by which a testator, by payment or gift in his lifetime, confers on a legatee the benefit which he had proposed to give by will at his death under a general or demonstrative legacy, or else the act by which a specific legacy has become inoperative because of the withdrawal or disappearance of its subject matter from the testator's estate in his lifetime.
The general rule governing gifts subject to ademption is stated in 96 C.J.S. Wills § 1173 at 987 (1957) as follows:
"Ademption," in the strict sense of the word, as discussed supra § 1172, applies only to specific legacies, and legacies of *921 the proceeds of specific property, and not to those which are in their nature general, or demonstrative, and where the bequest is of the entire estate, no matter how it may change in form or character, there is no ademption as to such gift... .
Since the two children were devised an undivided interest in the entire estate, there was no ademption.
The chancellor held that the deeds were supported by a valuable consideration and we hold that the evidence supports this finding of fact. The land conveyed by these deeds does not constitute any part of the estate of the decedent and we affirm this action of the chancellor so holding.
Appellants next contend that the court erred in allowing appellee $3,000 for a widow's allowance. The amount of the allowance is not attacked, but appellants urge that appellee was not being supported by her husband during his lifetime because he had only a small income from social security and was ill for many years before his death. The chancellor found that appellee and decedent were living together as husband and wife at the time of his death and he was therefore under a duty to support her and that the widow's allowance was proper under Section 561 Mississippi Code 1942 Annotated (1956). Appellants rely on In Re Marshall's Will, 243 Miss. 472, 138 So.2d 482 (1962) where this Court upheld a chancellor's denial of a widow's allowance. The widow had lived apart from her husband for many years and did not show that she was away from him without fault on her part. Marshall was correctly decided, but the facts on which the decision were based are not present in this case. Decedent was under a duty to support appellee and the allowance was proper. A widow is entitled to an allowance for one year's support for herself and minor children under Section 561. The statute applies to cases of testacy and intestacy alike except in the case of wills where it clearly appears that the provisions in the will for the widow and minor children of the decedent are in lieu of the one year's support provided for by the statute. Beckett v. Howorth, 237 Miss. 394, 115 So.2d 48 (1959); Harwell v. Woody, 206 Miss. 863, 41 So.2d 35 (1949); Westbrook v. Shotts, 200 Miss. 456, 27 So.2d 683 (1946); Gilmer v. Gilmer, 151 Miss. 23, 117 So. 371 (1928); Stewart v. Stewart, 132 Miss. 515, 96 So. 694 (1923); Whitehead v. Kirk, 106 Miss. 706, 64 So. 658 (1914); Turner v. Turner, 30 Miss. 428 (1855); Edwards v. McGee, 27 Miss. 92 (1854); McReary v. Robinson, 20 Miss. 318 (1849). We affirm the allowance of a year's support to appellee.
The chancellor held that appellee owned dairy cattle which were located on the farm of the parties and that decedent owned 10 head of beef cows and 1 bull which were sold in the course of the administration of the estate for the sum of $1,438.08. Decedent, during his lifetime, had borrowed money from a bank and gave as security his beef cattle and the dairy cattle of appellee. After the death of decedent, appellee sold her dairy cattle for approximately $800 and applied the proceeds on the note due the bank. She sold 5 calves which were offspring from the beef cattle of decedent for $506.34 and applied this sum on the note and paid the balance of $147.80 out of money earned by her.
Appellant makes several contentions with reference to the allowance of the probated claim of appellee; one being that appellee discharged a portion of the debt with money received from the sale of 5 calves. Appellee was devised and bequeathed a life estate in all the property of decedent and was entitled to the natural increase from the livestock of decedent produced during the continuance of the life estate. 31 C.J.S. Estates § 136 (1964); 4 Am.Jur.2d Animals § 11 (1962). Appellee killed one of the calves for her own use and we hold that this was proper because she was entitled to all of the increase of the livestock in which she had a life estate.
*922 Appellant also argues that the court erred in permitting appellee to testify about payment of the note due by decedent to the bank out of her personal funds. Appellant contends that such testimony was barred by Section 1690 Mississippi Code 1942 Annotated (1956), but since the payment was made after the death of decedent appellee was competent to testify because her claim did not originate during the lifetime of deceased, but afterwards. Witherspoon v. Blewett, 47 Miss. 570 (1873). The chancellor properly allowed the probated claim and his action is hereby affirmed.
The chancellor also allowed appellee reimbursement for taxes in the amount of $89.88 paid by her on the real property of decedent. Appellee owned an undivided one-half interest in this property and had a life estate in the other undivided one-half interest and was therefore under the duty to pay the taxes. Martin v. Eslick, 229 Miss. 234, 90 So.2d 635 (1956); Tillman v. Richton Tie and Lumber Co., 224 Miss. 789, 80 So.2d 745 (1955); Magee v. Holmes, 220 Miss. 49, 70 So.2d 60 (1954); Federal Land Bank of New Orleans v. Newson, 175 Miss. 134, 166 So. 346 (1936); 31 C.J.S. Estates § 47 (1964). The action of the chancellor in making the allowance for taxes is hereby reversed.
The chancellor also allowed appellee $532.50 for the funeral expenses of decedent. Ordinarily funeral expenses are payable out of the assets of the estate of a decedent; however, the funeral expenses in this case were paid by a contribution of one child in the amount of $25.50, social security death benefits in the amount of $150.00 and a funeral policy in the amount of $357.00. No part of the funeral expense was paid by the appellee from her funds and this allowance was therefore improper. We reverse the chancellor with reference to this allowance.
The chancellor also allowed appellee $312.00 reimbursement for a monument erected at the grave of decedent. The action of the chancellor in making this allowance is hereby affirmed. Donald v. McWhorter, 44 Miss. 124 (1870).
The court ordered the one-half undivided interest of decedent in the real estate owned by him at his death be sold and directed that out of the proceeds of the sale, certain items be paid including the year's allowance for the widow. In Miers v. Miers, 160 Miss. 746, 133 So. 133 (1931) decedent was survived by a widow and 5 children, all adults. The widow applied for and was granted a year's allowance and there being no money or other property out of which to pay the allowance, the trial court ordered a sale of the lands constituting the homestead to make the allowance, the sale to be subject, however, to the homestead rights of the widow in said lands. In an opinion by Justice Griffith reversing the trial court, this Court stated:
The question is whether the homestead may be sold to pay the year's allowance. It is a new question in this state and, so far as we can find, has been squarely decided in only one case in other states, namely, in Hadsall v. Hadsall, 82 Neb. 587, 118 N.W. 331, 333, wherein the answer was in the negative. In that case and under statutes apparently similar to ours the court said: "Under our statutes the homestead cannot be taken into account in administering the estate of a deceased person. So far as administration of a decedent's estate is concerned, it is as though the homestead property never belonged to the decedent." (160 Miss. at 749, 133 So. at 133.)
......
The sections of our statutes which deal with the matter of the year's allowance are sections 1654, 1656, 1664, and 1667, Code 1930, and what are assets of an estate are enumerated in section 1643, said Code. Under the language of these sections it would appear, at first view, that personal property rather than realty was in the legislative mind in providing *923 for the said allowance, and so the courts hold in a majority of the states, 1 Woerner, Law of Administration (3 Ed.), section 91; but, in view of the general expressions in several of our own cases, we are not prepared now to so limit the allowance, and besides that exact question is not before us. Suffice it to say now that although the privilege or exemption of a year's support is a claim of the highest dignity, First Nat. Bank v. Donald, 112 Miss. 681, 73 So. 723, it is not higher than that of the homestead. The year's support, however, is of a temporary nature, while the homestead is designed as a permanent protection and support so long as the family exists, and the family, in the eyes of the homestead law, continues to exist so long as the widow lives and remains a widow, sections 1412 and 1766, Code 1930; wherefore we must hold that the year's allowance cannot impinge upon the homestead.
But it is urged that the decree here does not impinge upon the homestead rights, since the sale was expressly ordered to be made subject to those rights. Unless the letter and the context of the law otherwise require, statutes must be so construed that their operation shall be consistent and practical. .. . (160 Miss. at 750, 133 So. at 134.)
......
... There will, of course, be an occasional case of isolation or ill health where it would be better to sell the homestead and move the family to a more advantageous location, but such cases can be met, for instance, by partition on the prayer or with the consent of the widow, and where the adjudication will not be ex parte, but all those in interest and to be affected will be made parties, and will have the right to be heard, and where the proceedings shall be under the watchful care of the chancellor at every step taken.
We are of the opinion, therefore, that the homestead is not subject to sale to make the year's allowance, and in that respect the decree of the chancery court is reversed and vacated. (160 Miss. at 752, 133 So. at 134.)
In Biggs v. Roberts, 237 Miss. 406, 115 So.2d 151 (1959), Roberts and his wife owned 20.5 acres in Jackson, Mississippi on which was situated the residence of the parties. Mrs. Roberts died and left her undivided one-half interest in the property to her only daughter, Mrs. Biggs. The court held that Mrs. Roberts was entitled to make the will and devise her one-half interest in the homestead to her daughter and that Roberts had no right to renounce the will because he owned property far in excess of the value of his wife's property. The daughter claimed the right to occupy a portion of the property and also claimed the right to a partition thereof and a division of the proceeds of sale. The court held that the only serious contention and issue was whether or not Roberts was entitled to hold the residence during his lifetime, so long as he remained a widower, as a homestead. The daughter, as appellant, contended that Roberts was entitled to claim a homestead only when his title was acquired by inheritance. This Court in a 5-4 opinion, held that it was not necessary for Roberts to acquire the property by inheritance in order to be entitled to claim it as a homestead.
The Court stated:
We think that the chancellor was correct in decreeing that Mr. Roberts is entitled to hold the property in question as a homestead so long as he remains a widower and that he was correct in holding that Mr. Roberts' title was acquired by the deed to himself and wife on February 16, 1926.
However, since he had no right to renounce his wife's will, as above pointed out, we are of the opinion that his attempted *924 renunciation was ineffective and that Mrs. Roberts, being the owner of a full undivided one-half interest in the property, had the right to dispose of the fee simple title to same by will and that consequently, under her will, Mrs. Biggs acquired an undivided one-half fee simple interest and not simply an undivided one-fourth interest as decreed by the chancellor. Consequently the decree of the lower court must be reversed and judgment here entered in favor of Mrs. Biggs for an undivided one-half interest in the fee simple title, not subject to partition during the widowerhood of Mr. Roberts. (237 Miss. at 414, 115 So.2d at 154.) (Emphasis supplied.)
The minority opinion cited Osburn v. Sims, 62 Miss. 429 (1884); Norris v. Callahan, 59 Miss. 140 (1881); Nash v. Young, 31 Miss. 134 (1856); and Turner v. Turner, 30 Miss. 428 (1855) which hold that an exemptionist may devise exempt property in the same manner and with the same effect as non-exempt property. The majority opinion held that Osburn, supra, was correctly decided under Section 1248, Code of 1880 but noted that this section was amended by subsequent legislation and now appears as Section 317 Mississippi Code 1942 Annotated (1956).
Biggs modified the holding in Osburn, Norris, Nash and Turner to the extent that an exemptionist may devise the homestead as other land, but may not thereby extinguish the homestead rights of a surviving spouse.
In view of the law announced in Miers and Biggs, we hold that appellee could not have the homestead property sold to satisfy her widow's allowance and further that the property is not subject to partition or sale during the widowhood of appellee without her consent. We further hold that appellee is not entitled to have the property sold and at the same time retain her homestead rights. The decree ordering the sale of the homestead is hereby reversed.
The decree appealed from charged the exempt realty with the debts of decedent. Appellants argue that the homestead cannot be charged with the debts of the decedent because of Section 329 Mississippi Code 1942 Annotated (1956). In Norris v. Callahan, 59 Miss. 140 (1881) the Court considered Section 2143 Code of 1871 which is the same as Section 329, supra, and stated:
The most important question in this case is, whether, under § 1956 of the Code of 1871, the land exempted by law from sale, under execution or attachment, and devised by the owner, was, by virtue of such devise, made liable to be sold by decree of the court in which the will was proved, on the application of the executor, to pay the debts of the testator after the exhaustion of the personalty, and other land? It was settled by the adjudications of this court under statutes employing the same phraseology as the section of the Code mentioned above, that the exemptionist had the right to dispose by will of his property, exempted from execution by law, and that it descended, only in case of the intestacy of the owner. Turner v. Turner, 30 Miss. 428; Nash v. Young, 31 Miss. 134. Under § 1956 of the Code of 1871 the property exempted by law from sale did not descend where the owner of it disposed of it by will. That section was operative only in case of intestacy. But a farther question is, did the devise of it render it liable to be devoted to the payment of the debts of the testator? It would descend, as provided by law, only in case of intestacy, but did the disposal of it by its owner make it liable for his debts, when it was not liable before? We think not. Section 2143 of the Code of 1871 declares that: "The exempt property, real or personal, may be disposed of, as any other property may be, by the *925 owner, and shall not, by such disposal, become liable to the debts of such owner." We therefore hold that the fact that the homestead was devised did not subject it to sale for the payment of the debts of the testator. It is quite clear that the will did not charge the homestead with the debts of the testator. It is true it used language held sufficient by itself to charge land with debts. The language is: "First, after all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give," &c. But in the will the testator appropriated a specific fund to pay his debts and thus clearly negatived a purpose to charge them on the other land. 3 Jarman on Wills (5th Am.ed.), 411. (59 Miss. at 142.) (Emphasis supplied.)
We hold that a homestead may not be subjected to the debts of a decedent and the decree of the chancery court directing that the debts of the decedent be paid out of the proceeds of the sale of the homestead is reversed.
The will in question directed that a suitable monument be placed at the grave of decedent. We hold that a decedent may not charge his homestead with the expense of erecting a monument and thereby defeat the homestead rights of the widow.
Appellee may waive her homestead rights and petition the court for sale of the homestead property under item 4 of the will. If such sale is made, the cost and expenses incident thereto may be deducted before distribution, but no part of the proceeds may be used to pay the cost of this appeal or of administering this estate, nor be applied toward payment of any debts of decedent or allowance for year's support for appellee. Since decedent owned an undivided one-half interest in 89 acres of land, the other one-half interest being owned by appellee, if decedent's interest is sold by consent of appellee, decedent's undivided interest shall be partited in kind so that a sale may be made of a fee simple interest in the whole rather than an undivided one-half interest in the entire 89 acres.
The chancellor held that Mrs. Audrey Darr should not share in the estate of decedent because she was not named in item 3 of the will. Appellant contends that this holding was in error because the intent of the will was that all of the children of decedent share in the estate in equal parts.
It is noted that item 3 of the will lists the names of 11 children. The proof shows that decedent had 8 children by his first marriage whose names and birthdates are as follows:

 Leonard William Mills January 28, 1917
 Louretta Mills May 17, 1918
 Helen Sufloria Mills December 30, 1919
 Marguerite Mills November 16, 1924
 Audrey Genevieve Mills January 20, 1927
 Glenna Evelyn Mills December 28, 1920
 Osie May Marion Mills February 26, 1930
 Nevada Elizabeth Mills May 14, 1933

Decedent had 4 children by his second and last marriage whose names and birthdates are as follows:

 Jeanette Mills March 31, 1935
 Gertrude Ann Mills September 26, 1940
 Lola May Mills May 29, 1942
 William Henry Mills, Jr. April 24, 1946

A comparison of the children listed in item 3 of the will with the children born to decedent, shows that, not only was the name of Mrs. Audrey Darr omitted from item 3 of the will, but the names of Glenna Evelyn Mills, Osie May Marion Mills and Nevada Elizabeth Mills were likewise omitted. It is possible that the names appearing in item 3 as Lavada Mills Derflinger, Miriam Mills and Evelyn Mills Fox might be the same persons as the last three named in the preceding sentence, but such does not appear in the record. Decedent left his wife a life estate in his property by item 2 and by item 3 devised and bequeathed unto his children all of his property subject to the life estate of his wife. *926 Item 4 provides that items 2 and 3 are subject to the limitation that his property should be sold after William Henry Mills, Jr. became 21 years of age with the proceeds of the sale to be divided among his wife and children, share and share alike. All the provisions of the will must be given effect and contradictory provisions harmonized, if possible, to determine the intent of the testator. The devise to certain named children in item 3 of a remainder interest was limited by item 4 which came into effect when William Henry Mills, Jr. lived to the age of 21 years. When this event occurred, item 4 then became effective and controls the disposition of the property of testator. We are of the opinion therefore that the widow and all 12 children share in the property subject to the provisions of item 5 as to Louretta Mills Curry and Jeanette Mills Loper. By item 5, they are not to share in the estate unless their proportionate share exceeds $4,000, and then only in excess of said sum, which will happen only if there is a dramatic increase in the value of the property.
We hold that appellee has homestead rights in the real property and that it cannot be sold or partited during her widowhood without her consent although the will directs a sale thereof.
The homestead of decedent was sold to William H. Mills, Jr. for the sum of $7,000. For the reasons stated above, this sale is vacated and set aside.
After sale of cattle, the estate consists of the following:

 Cash on hand at time of death $ 339.76
 Farm equipment .............. 540.00
 Sale of cattle .............. 1,438.08
 _________
 Total ....................... $2,317.84

As has been previously noted, the widow is entitled to a year's allowance whether the estate be solvent or insolvent and whether decedent died testate or intestate and it may be paid from exempt personalty; however, Section 623 Mississippi Code 1942 Annotated (1956) provides that, in estates that are insolvent, expenses of the last sickness, funeral expenses and costs of administration, including commissions, are preference claims and shall be paid first. These items are administrative expenses and have been given first priority by the legislature. We hold that a year's allowance to a widow and children in insolvent estates is a claim of next priority, is to be paid before creditors, and such allowance may be paid out of exempt personal property, in cases where the exempt property is disposed of by the will of a testator. In cases of intestacy, it descends as provided by statute, and, where administration is not necessary, is not subject to administrative expenses.
We therefore remand and direct that out of the personal estate there shall be first paid court costs, commissions to the Administratrix, C.T.A., attorneys fees and cost of the monument erected at the grave of decedent which is a part of funeral expenses. The balance remaining shall be applied toward the year's allowance awarded to appellee as the surviving widow, but since this allowance is for $3,000, there will be nothing remaining to pay on the probated claim allowed appellee.
The chancellor directed that the farm equipment valued at $540[2] be delivered to appellee to apply on the year's allowance. We do not anticipate that the preference claims will exceed the $1,777.84 cash in the hands of appellee requiring a sale of the farm equipment to raise additional cash to apply toward payment of such preference claims. We affirm the action of the chancellor directing that the farm equipment be applied toward payment of the year's allowance to the widow.
*927 We are of the opinion that the court should reexamine the fees and commissions heretofore allowed and base such allowances on the value of the personal estate only. The cost of the litigation whereby appellee sought to subject the homestead to payment of her probated claim and year's allowance should not be charged against the estate because this was a controversy between appellee and appellants instituted by appellee. Banks v. Junk, 264 So.2d 387 (Miss. 1972).
Other errors were assigned, but because of the conclusions herein reached, it is not necessary to consider them.
Affirmed in part, reversed in part and remanded.
RODGERS, P.J., and SMITH, WALKER and BROOM, JJ., concur.
NOTES
[1] The provisions of the will necessary for a decision are as follows:

I.
I hereby direct that a suitable munument (sic) be placed at my grave, and that my just debts be paid.
II.
I do now reaffirm my love and affection for my wife, RUBY G. MILLS, and the devotion that I have had for her these many years, and I hereby give, bequeath and devise unto her a life estate in and to all of my property, real, personal and mixed, wheresoever located, that I may own and possess at my death, but with the restriction that she is not to sell or convey any of said property during her lifetime without a Decree of the Court administering my Estate, or unless all of my heirs as hereinafter named agree as to the conveyance of the property.
III.
I hereby give, bequeath and devise unto my beloved children all my property, real, personal and mixed, wheresoever located, that I may own and possess at my death, subject to the life estate of my wife, RUBY G. MILLS, to share and share alike, my said children being:
 LEONARD MILLS
 LOURETTA MILLS CURRY
 HELEN MILLS
 MARGUERITE MILLS
 LAVADA MILLS DERFLINGER
 MIRIAM MILLS
 EVELYN MILLS FOX
 JEANETTE MILLS LOPER
 ANN MILLS ROBERTS
 LOLA MILLS TATUM and
 WILLIAM HENRY MILLS, JR.,
and in addition thereto, I do hereby admonish and counsel them to ever conduct themselves in the teachings of God and to seek His infinite wisdom at all times.
IV.
The above stated Items II and III are subject to the limitations that my said wife and children shall sell and convey my said property after my son, WILLIAM HENRY MILLS, JR., becomes twenty-one years of age, in which event and at that time my wife and children are to divide the proceeds of the sale thereof, to share and share alike. If anyone of my children desires to give my wife, RUBY G. MILLS, their share of my estate after such sale, such a decision is left entirely to their discretion.
V.
I have heretofore helped LOURETTA MILLS CURRY and JEANETTE MILLS LOPER by building them a house, and they are not to share in my estate unless their proportionate share exceeds $4,000.00, in which event they are to receive their share in an amount (s/s W.H.M., Sr.) in excess of said sum.
[2] The value of the farm equipment is shown as $540 in the final account, but as $510 in the decree.