SMITH, Justice,
for the Court.
This appeal arises from a decision of the chancellor in Harrison County Chancery Court in favor of Jon Franzke and the Estate of Betty Sims Franzke against the Memorial Hospital at Gulfport. The single issue of contention, before this Court on first impression, is this Court’s interpretation of Mississippi Code Ann. § 85-3-49 and § 91-1-21, in relation to the following situation: when a decedent dies leaving no surviving spouse, child or grandchild, yet the decedent has disposed of her previously exempt homestead property by making a will, is the homestead *118 exemption still valid as against unpaid claims against the decedent’s estate?
We note that the chancellor was concerned that the Hospital’s position was “exactly right.” Nonetheless, the chancellor ruled for the Estate for fear of being reversed by this Court since the law generally is liberally construed in favor of the party entitled to an exemption. The chancellor was correct that homestead exemption laws should be liberally construed favoring exemptionists; however, he failed to also note this Court’s directive that chancellors construe sensibly the homestead exemption statutes, Newton County Bank, Louin Branch Office v. Jones, 299 So.2d 215, 219 (Miss.1974). The lower courts need only concern themselves with that which is right and fair, applying the correct legal precedent of this Court to all cases in order that justice be had by one and all. The chancellor’s initial thoughts on the law were correct; yet, fear of reversal clouded the chancellor’s reasoning and resulted in an erroneous opinion. The chancellor failed to note that with the death of Betty Sims Franzke, there no longer was an exemptionist who could defeat the claim against the Estate’s supposed homestead property. The specific language of the statute does not continue a decedent’s homestead exemption for anyone other than a surviving spouse, children or grandchildren. Although Jon Franzke is the ex-spouse of the decedent, he does not fit into any of the categories that the statute allowed to continue claiming the exemption. We must reverse and render.

STATEMENT OF FACTS

The parties submitted a joint stipulation of facts to the chancellor. A summary of the stipulated facts submitted reveals the following relevant information:
1. The Petitioner, Jon Franzke, is an adult resident of St. Tammany Parish, Louisiana, presently residing at 1393 9th Street, Slidell, LA 70458.
2. Respondent, Memorial Hospital at Gulfport, is a community hospital duly organized and existing under the provisions of Section 41-13-10, et. seq., of the Mississippi Code of 1972, as amended.
3. Betty Sims Franzke departed this life on the 21st day of August, 1988, leaving her Last Will and Testament.
4. On October 31,1979, Joe T. Evans and Geni P. Evans conveyed to Betty S. Franzke real property, situated and being within the First Judicial District of Harrison County, Mississippi.
5. That, at the time of her death, the Deceased was a resident citizen of the State of Mississippi, and resided in a .dwelling upon the hereinabove described land in the First Judicial District of Harrison County, MS. Said land has an estimated value of $41,000.00, as of March 24, 1988.
6. That Betty S. Franzke was lawfully divorced from Jon W. Franzke on April 2, 1981, Cause No. 78,188 in the Chancery Court in the First Judicial District of Harrison County, MS.
7. That Betty S. Franzke did not remarry during her lifetime, and left no children or grandchildren surviving her. Jon Franzke has not resided in Mississippi at any relevant time and has not been a citizen of Mississippi at any relevant time.
8. That, on March 9, 1990, the Will mentioned above was admitted to probate and recorded, and Jon Franzke was appointed to serve as Executor of said Last Will and Testament.... The said Jon Franzke is now the duly appointed, qualified and acting Executor of the Last Will and Testament of Betty S. Franzke, Deceased.
9. That due and legal notice to the creditors of said Estate was given by publication and was in all respects in the manner and form required by law. (Publication dates omitted).
10. That, in response to the aforesaid notice to creditors, the following claims have been filed in this cause:
*119 [[Image here]]
Claim of South Central Bell in the sum of 17.56 c4
Claim of French Drugs in the sum of 133.56 co
Claim of Memorial Hospital in the sum of 11,359.80 ^
Claim of Jon and Sissy Franzke in sum of 3,184.58 to
TOTAL PROBATED CLAIMS 14,710.03
11. That, in connection with the purchase of the hereinabove described land, the Deceased assumed payment of a Promissory Note executed to Unifirst Federal Savings and Loan Association in the original principal sum of $28,000, with monthly payments commencing on August 1, 1978. Said Promissory Note had a principal balance as of the date of death of the Deceased on $24,982.13 and now has a principal balance of $23,801.99. Said Promissory Note is secured by that certain Deed of Trust, covering the land hereinabove described, and filed for record in the office of the Chancery Clerk in the First Judicial District of Harrison County, Mississippi.
12. That, Elna Daniel Sims predeceased Betty Sims Franzke, and under the provisions of Item Six of the Last Will and Testament of the Deceased, all of the property of the Deceased was devised and bequeathed to Jon Franzke, Executor.
13. The Board of Trustees of Memorial Hospital at Gulfport, is without knowledge sufficient to form a belief as to the correctness of the following matters, but does not contest their truth for the purposes of these proceedings:
a. That the Executor has made reasonably diligent efforts to identify persons having claims against the Estate, and has mailed a notice to persons so identified, at their last known address, informing them that a failure to have their claim probated and registered by the clerk of this court within ninety (90) days will bar such claim.
b. There was a true account of all the personal estate on hand, assets of every description, the land of the Deceased, and all debts due the Deceased.
c. That, under the terms of said Deed of Trust, and the Promissory Note secured thereby, in addition to the principal and interest payments provided for under the terms of said Promissory Note, a sum equal to ¾2 of the estimated ad valorem taxes and hazard insurance is required to be paid for the coming year. At the present time, the monthly installments required, including the principal, interest and estimated taxes and insurance premiums are in the sum of $396.00.
d. That, prior to opening this Estate, the Executor entered into a month-to-month tenancy with Ray Wilkinson, commencing on January 1, 1989, under the terms of which the above described house was rented for a sum of $350.00 payable on the first day of each month. Further, a security deposit of $150.00 was collected from Ray Wilkinson. Said premises were rented in order to raise the money required for payment under the described Promissory Note. Prior to this rental, it was necessary to clean the house and yard, maintain utility service, advertise the property, hire a neighbor to manage the property, and perform certain repairs and renovations in order to rent the property. The expenses in connection with the rental of the property have exceeded rent receipts, since such property was rented, and the Executor has personally advanced funds, from time to time, due to the insufficiency of the Estate for such payments.
e. That the Executor has personally paid Honaker Funeral Home, Inc., the sum of $703.00, and Ridouts Elmwood Chapel the sum of $795.00 for funeral and burial expenses. The Executor paid for these services personally, prior to opening the Estate. The Executor also purchased a burial marker for the sum of $275.00, using a portion of the proceeds of the sale of household furnishings of the Deceased.
f. That, at the present time, anticipated expenses of administration include estimat *120 ed court costs in this cause of not more than $200.00, estimated attorney’s fees not to exceed $3,000.00, and compensation to the Executor not to exceed $1,000.00.
The parties subsequently briefed and orally argued the matter before the lower court at a hearing held on May 23, 1990. The chancellor ruled in favor of the Estate, finding that the real property constituting the residence of the deceased was exempt from seizure and sale and therefore should not be sold for payment of the probated claims, including that of the Hospital.
Feeling aggrieved, the Hospital presents the following single issue for review by this Court:
WHETHER OR NOT THE LOWER COURT ERRED IN HOLDING THAT THE RESIDENCE OF BETTY SIMS FRANZKE WAS NOT LIABLE FOR HER DEBTS, INCLUDING PARTICULARLY THE DEBT OF APPELLANT, AFTER HER DEATH BUT WAS EXEMPT AS A HOMESTEAD, NOTWITHSTANDING THAT SHE DIED LEAVING NO HUSBAND, CHILD OR GRANDCHILD.

DISCUSSION

There is no question that the decedent, Betty Franzke, met the qualifications to entitle her to claim a homestead exemption during her lifetime. She was a Mississippi resident and a householder who occupied the land and house in question as a residence, Miss Code Ann. § 85-3-21 (1972). In addition, the value of the exemption allowed at the time of Franzke’s death was $30,000.00. Miss.Code Ann. § 85-3-21 (Supp.1988). The facts indicate that Franzke’s property had a net value of approximately $16,000 after a deduction of the mortgage lien.
Further, the Hospital acknowledges that the fact that Franzke was single did not change her entitlement to claim the exemption during her lifetime. The Hospital also notes the basic homestead exemption statute, Miss.Code Ann. § 85-3-21, prior to 1979, and that same section as amended. Prior to 1979, § 85-3-21 provided:
Every citizen of this state, male or female, being a householder, and having a family, shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him, or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of fifteen thousand dollars ($15,000.00); provided, however, that in determining this value, existing encumbrances on such land and buildings, including taxes and all other liens, shall first be deducted from the actual value of such land and buildings. But husband or wife, widower or widow over sixty years of age, who has been an exemp-tionist under this section, shall not be deprived of such exemption because of not having family or not occupying the homestead.
In its present form, the above-quoted statute reads:
Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buddings owned and occupied as a residence be him, or her,.... But husband or wife, widower or widow, over sixty (60) years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not residing therein.
As can be seen, the current version of § 85-3-21 has deleted the language “and having a family” from the requirements necessary for one to claim the exemption. The Hospital correctly states that the purpose of this amendment was to allow single persons to claim the homestead exemption, the same as persons with families. This interpretation is clearly supported by this Court’s decision in Pickle v. Pickle, 476 So.2d 32 (Miss.1985). Therein, the appellant argued her ex-husband was not entitled to claim the homestead exemption. This Court stated:
All of her authority, however, is based on our old statute, which required that the claimant of a homestead exemption be a householder with a family. Appellant *121 overlooks the fact that in 1979 the statute was amended to make householders eligible for the exemption even if they are single. The current statute, MCA Section 85-3-21 (Supp.1984), requires only that the claimant be a citizen of Mississippi, a householder and one who occupies the land in question as a residence.
Id. at 34.
The remaining question for this Court’s determination is the effect of the deceased’s testamentary disposition of the homestead to her ex-husband, considering that she left no surviving children or grandchildren.
At the conclusion of the hearing the chancellor stated, in ruling in favor of the Estate:
Well, /all are going to appeal this anyhow, aren’t you? I-hope one of you will because I’ve got to rule one way or the other and I’m going to flip a coin. It’s really not clear to me, either way, and I’m scared. I’ve been burned once, and once they jump up and down on you, I hate to do it twice. I’m going to go ahead and rule for Mr. Raines because of the trepidation that I have in my heart, if you want to know the truth, even though hard cold logic says that Mr. Galloway’s argument is exactly right. But, then, I’ve been whipped with this homestead proposition before, and I think they have a disposition to uphold the homestead in any case. That’s what I got out of that McCauley v. Ward decision, and I think they may very well favor that position in this case so I’m going to favor it, based on my experience in the past. Thank you.
This is a ease of first impression, requiring this Court’s interpretation on the application of two statutes, which read as follows:
Miss.Code Ann. § 85-3-49. Exempt property may be disposed of.
The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution.
Miss.Code Ann. § 91-1-21. Exempt property liable for debt of decedent.
If there shall not be either a surviving wife or husband or children or grandchildren of the decedent, the exempt property shall be liable for the debts of the decedent and may be disposed of in all respects as other property of such decedent.
The Estate takes the position that the trial court’s ruling was correct, based on the following reasoning:
“The house and lot in issue constituted the homestead of Betty Sims Franzke during her lifetime. If she had not made a will, the property would have become liable for her debts at her death in accordance with the provisions of § 91-2-21 of the Miss.Code Ann. of 1972, as amended, and subject to sale for the payment of the Hospital’s claim. By making a will, however, Mrs. Franzke made a disposition of her property within the meaning of § 85-3-4,9 of the Miss.Code Ann. of 1972, as amended. Because of such testamentary disposition, the property in issue did not become liable for the debts of the owner, and is not subject to sale for the payment of the Hospital’s claim.”
The Hospital responds that both the Estate’s reasoning and the lower court’s decision are unsupported by legislative intent or public policy and, in addition, are illogical. The Hospital argues: “The legislature has granted homeowners a personal privilege to claim an exemption; necessarily when the homeowner dies leaving no other person to whom the legislature also has granted that personal privilege — i.e., the owner’s spouse, children and grandchildren, there is no one to claim any exemption, regardless of whether or not the former owner left a will, and the property becomes subject to the former owner’s debts.” The Hospital is correct in their contention.
The Hospital submits that the cases relied upon by the Estate cannot support the Estate’s view that the disposal by will of the homestead by its owner, Betty Franzke, made it exempt from her debts. Rather, the exemption which Betty Franzke was certainly entitled to during her lifetime necessarily expired with her at her death since there were no persons remaining who were entitled to claim a continuing exemption. The Hospital points out that each of the cases relied *122 upon by the Estate can be factually distinguished as they involved a situation in which the owner of a homestead died with a surviving spouse, children or grandchildren.
For instance, the Estate cites Mills v. Mills, 279 So.2d 917 (Miss.1973), and Norris v. Callahan, 59 Miss. 140 (1881). In Mills, the decedent died leaving a widow and twelve children surviving him. The widow/appellee petitioned for her widow’s allowance and other debts to be paid from the sale of the homestead property and “subject to the widow’s homestead rights.” Mills, 279 So.2d at 919. In denying the widow’s petition, this Court quoted the following language from Norris v. Callahan:
The most important question in this case is, whether, under Section 1956 of the Code of 1871, the land exempted by law from sale, under execution or attachment, and devised by the owner, was, by virtue of such devise, made hable to be sold by decree of the court in which the will was proved, on the application of the executor, to pay the debts of the testator after the exhaustion of the personalty, and other land? It was settled by adjudications of this court under statutes employing the same phraseology as the section of the Code mentioned above, that the exemp-tionist had the right to dispose by will of his property, exempted from execution by law, and that it descended, only in case of the intestacy of the owner, (cites omitted). Under Section 1956 of the Code of 1871 the property exempted by law from sale did not descend where the owner of it disposed of it by will. That section was operative only in case of intestacy. But a farther question is, did the devise of it render it liable to be devoted to the payment of the debts of the' testator? It would descend, as provided by law, only in case of intestacy, but did the disposal of it by its owner make it liable for his debts, when it was not liable before? We think not. § 2143 of the Code of 1871 declares that: “The exempt property, real or personal, may be disposed of, as any other property may be, by the owner, and shall not, by such disposal, become liable to the debts of such owner.” We therefore hold that the fact that the homestead was devised did not subject it to sale for the payment of the debts of the testator.
Id. at 924-25. (emphasis added). The Court thus held in Mills that where the owner died testate but with a surviving spouse and children, the widow could not have her homestead sold to satisfy her personal allowance or other debts of the decedent.
In Norris the issue arose whether the executor could sell the homestead and pay the decedent’s personal debts, or whether the property descended free from debt. Therein, the owner died testate and was survived by his children who were also his devisees, some of them minors, who still resided on the property claimed by the decedent as his homestead. As noted above, the fact that the homestead passed to the children by will, rather than descent as would have been the case had the owner died intestate, did not defeat the children’s right to claim the homestead exemption. Id. at 924-25.
The Hospital submits first that neither Mills nor Norris is applicable to the case sub judice because Betty Franzke, owner of the homestead exemption, left no surviving spouse, children or grandchildren. The Hospital argues that these cases “established that homestead property devised to a spouse or children or grandchildren remained exempt to the same extent as it would have if the spouse or children or grandchildren had inherited it when the deceased left no will— in other words, that devised homestead property had the same exemption as a homestead property inherited under the laws of descent and distribution.” The Hospital further argues that the law has never allowed a person, whether an heir or a devisee, to claim the decedent’s former homestead exemption when the decedent leaves no surviving persons within the class of persons intended by the legislature to claim the exemption.
Finally, the Hospital concludes that the legislature did not intend for § 85-3-49 to be twisted in order to create a distinction between the former homestead of a person with no family who dies intestate and the former homestead of a person with no family who devises it. The Hospital submits that “the act of disposal (making a will) is not what *123 causes the loss of exemption; what causes the loss of exemption is the death of the homeowner leaving no person who could claim an exemption in the property.”
This Court also in Norris v. Callahan, spoke of “the chief object of the exemption laws, which is to secure a home for the children during their infancy, and [the loss of which] might render them destitute when they most needed shelter.” 59 Miss, at 142. Further, this Court has stated that it “rightly follows the rule that our statutes on homestead and exempt property should be ‘liberally1 construed in favor of the exemptionist.” Newton County Bank, Louin Branch Office v. Jones, 299 So.2d 215, 219, citing Biggs v. Roberts, 237 Miss. 406, 115 So.2d 151 (1959). However, “[c]reditors were warned in the Biggs decision ‘that the homestead is sacred ground,’ but in the same decision is the admonishment that the statutes directed at homestead are ‘to be construed sensi-bly_’” Newton County Bank, 299 So.2d at 219.
We hold that the former homestead of the deceased should be hable for payment of the Hospital’s claim. This conclusion takes into account the purpose of the homestead exemption statute, which this Court has stated is “granted as a family shield....” Felder et ux. v. Felder’s Estate et al., 195 Miss. 326, 335, 13 So.2d 823 (1943). Obviously, the former husband of the decedent is not within the class of persons designated in § 91-1-21 to be protected from the debts of the decedent. The Estate admits had Betty Franzke died intestate; her former homestead would have been hable for her debts, including the claim of the Hospital. To allow Jon Franzke to take advantage of Betty Franzke’s former exemption simply because he was devised her property would not effectuate the design of the statute. Also, the fact that Jon Franzke is the ex-spouse of the decedent is of no consequence under the controlling language of the statute. As the Hospital repeatedly notes, the cases cited by the Estate do not involve a situation in which the decedent dies leaving no surviving spouse, child or grandchildren. In a nutshell, the Hospital argues that if there were any person remaining who was entitled to claim the exemption, § 85-3-49 would certainly apply. Again, that section states, in relevant part: “The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner_” However, as no persons remain to claim the exemption, the exemption dies with its former holder. The property does not, simply by the fact that it was devised by the decedent, again become exempt.

CONCLUSION

Based on the public policy behind the enactment of the homestead statutes and the language of Section 91-1-21, we hold that the former homestead exemption of Betty Franzke expired with her death and her Estate should be subject to the payment of the Hospital’s claim. The lower court was of the opinion that the Hospital’s position was “exactly right” based on “cold hard logic,” and that logic should have prevailed. However, the lower court ruled in favor of the Estate for fear of again being reversed by this Court due to the fact that the law generally favors the homestead exemption and is to be liberally construed in favor of the ex-emptionist. Myrtle v. Garrison, 183 Miss. 526, 184 So. 291 (1938). Although this is true, there is no indication that the legislature intended to distinguish between persons with no family who died intestate, whose former homestead would certainly be hable for the decedent’s debts, and persons with no family who died testate. The cases relied upon by the Estate indicate only that the § 85-3-49 simply permits disposal of homestead property, such as by devise, by the owner without making it “hable for his debts, when it was not hable before.” Mills, 279 So.2d at 924. In both Mills and Norris the homestead was “not hable before” because of the surviving spouse and/or children who remained entitled to continue to claim the exemption. Thus, despite the fact that the homestead exemption is generally construed as favoring the exemptionist, the Estate’s position is unsupported by either pubhc policy, statutory law or our case law and thus fails. The intent of the legislature has been made abundantly clear in the language of these statutes. The decision of the lower *124 court was erroneous and this case is hereby reversed and rendered.
REVERSED AND RENDERED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., concurs in results only.
McRAE, J., not participating.